Shirley WILLIAMS, Plaintiff,

v.

SPRINT/UNITED MANAGEMENT
COMPANY, Defendant.

No. 03–2200–JWL.

United States District Court,
D. Kansas.

July 1, 2004.

**484**

Dennis E. Egan, Stephen J. Dennis, Bert S. Braud, The Popham Law Firm, P.C., Kansas City, MO, Gene P. Graham, Jr., Deborah J. Blakely, White, Allinder, Graham & Buckley LLC, Independence, MO, Dirk L. Hubbard, John M. Klamann, Klamann & Hubbard, P.A., Overland Park, KS, Martin M. Meyers, The Meyers Law Firm, LC, Kansas City, MO, for Plaintiff.

Chris R. Pace, Jill S. Ferrel, Stephany J. Newport, Sprint, Overland Park, KS, Christine F. Miller, James F. Monafo, Husch & Eppenberger, LLC—St Louis, St. Louis, MO, David M. Eisenberg, Baker, Sterchi, Cowden & Rice, L.L.C.—Kansas City, John J. Yates, Patrick F. Hulla, Husch & Eppenberger, LLC—Kansas City, Kansas City, MO, for Defendant.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on plaintiff's motion to join additional parties as plaintiffs and for provisional certification of the action as a collective action pursuant to 29 U.S.C. § 216(b) (doc. # 256). Plaintiff also requests that the court facilitate joinder of the putative class members by approving the sending of a notice to those who have not yet filed written consents to join the action. As set forth in more detail below, plaintiff's motion is granted.

1. Plaintiff's complaint also alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. This claim, however, is not relevant to the motions before the court.

2. The ADEA incorporates the procedures for enforcement of the Fair Labor Standards Act (FLSA). 29 U.S.C. § 626(b). A class action under the ADEA is therefore governed by § 16(b) of the FLSA found at 29 U.S.C. § 216(b) rather

*Procedural History*

Plaintiff Shirley Williams filed a complaint on April 23, 2003 alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., arising out of her employment with defendant.[1] In her complaint, plaintiff further alleged that defendant had engaged in a pattern and practice of age discrimination against plaintiff and others similarly situated to plaintiff such that the action should proceed as a collective action under the ADEA.[2] Shortly after plaintiff filed her complaint, individuals began opting-in to the action by filing the requisite consent forms. To date, approximately 119 individuals have filed consent forms as opt-in plaintiffs. Moreover, the parties have engaged in considerable discovery concerning the appropriate composition of the proposed plaintiff group (*i.e.*, the "similarly situated" issue). The parties have not yet engaged in discovery concerning the merits of plaintiff's pattern and practice allegations nor have the parties engaged in discovery concerning any issues specific to plaintiff or any members of the opt-in group.

Plaintiff now moves the court to join the opt-in plaintiffs and to provisionally certify the action as a collective action for purposes of providing notice of the action to other potential plaintiffs.

*Standard*

Class actions under the ADEA are authorized by 29 U.S.C. § 626(b), which expressly borrows the opt-in class action mechanism of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) (1994). Section 216(b) provides for a class action where the complaining employees are "similarly situated." The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of

than Rule 23 of the Federal Rules of Civil Procedure. Section 16(b) provides that an action may be brought by an employee for himself or herself and on behalf of "other employees similarly situated." An employee similarly situated does not become a party-plaintiff under § 16(b) "unless he gives his consent in writing to become such a party" and files consent in the court where the action is pending. 29 U.S.C. § 216(b).

§ 216(b). *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D.Colo. 1997)). That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995). For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). The standard for certification at the notice stage, then, is a lenient one. *See id.* at 1103; *see also Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D.Ala. 1995) (certification decision at the notice stage is usually based only on the pleadings and any affidavits which have been filed and, thus, the standard is fairly lenient and typically results in conditional certification of a representative class).

■ At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are "similarly situated" using a stricter standard. *Thiessen*, 267 F.3d at 1102–03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made the filings required by the ADEA before instituting suit. *Id.* at 1103.

While plaintiff is arguably beyond the "notice stage" in that 119 individuals have al-ready filed opt-in consent forms and the parties have engaged in considerable discovery with respect to the opt-in group, plaintiff has not yet sent notice of the action to potential plaintiffs and the parties have not engaged in discovery on those issues pertinent to the "second stage" analysis. Moreover, defendant does not contend that the court should employ the higher "second stage" standard at this juncture. *See, e.g.,* Deft's Brief at 3 (conceding that plaintiff's burden at this stage is "low") & 8 (stating that the case is at the "notice stage"). Thus, the court analyzes plaintiff's motion under the lenient "notice stage" standard described above and, in doing so, looks to the "substantial allegations" in plaintiff's first amended complaint[3] and various affidavits filed by plaintiff. *See, e.g., Thiessen*, 267 F.3d at 1102; *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988) (making initial determination that plaintiffs were similarly situated based on detailed allegations in the pleadings as supported by affidavits).

*Background*

Consistent with the standard articulated above, the following facts are based on detailed allegations in plaintiff's first amended complaint as supported by affidavits. According to plaintiff, defendant Sprint/United Management Company (hereinafter "Sprint") planned and implemented several phases of a reduction in force ("RIF") beginning in the fourth quarter of 2001 and extending through the end of the first quarter of 2003. The stated purpose of the reduction in force was to eliminate job functions and reduce costs. Plaintiff alleges that Sprint engaged in a pattern and practice of age discrimination in connection with its RIF by treating younger employees more favorably than older employees in implementing the RIF.

Specifically, plaintiff contends that Sprint, before and during the RIF process, routinely transferred younger employees (*i.e.*, employ-

---

**3.** While plaintiff has not yet filed her first amended complaint, she has filed a motion for leave to file her first amended complaint (doc. # 254) and that motion is also pending before the court. Because the court concludes that the allegations in the proposed amended complaint are sufficient to warrant conditional certification at this stage, the court grants plaintiff's motion (which defendant has not opposed) for leave to file the amended complaint. Plaintiff shall file the amended complaint (attached as Exhibit A to her motion for leave) within 10 days of the date of this order.

ees under the age of 40) to "safe" positions-positions that would not be eliminated during the RIF; that Sprint identified younger employees as "key talent" and took extraordinary measures to exempt those employees from the RIF; that Sprint transferred older employees (*i.e.*, employees over the age of 40) to positions or departments which Sprint intended to phase out or eliminate during the RIF process; and that Sprint filled "open" positions with younger employees just prior to the RIF and then terminated older employees in the same or similar positions during the RIF. Plaintiff further alleges that Sprint provided managers with spreadsheets for use in making termination decisions and that these spreadsheets contained age-related information about employees.

Plaintiff also describes in her first amended complaint Sprint's "forced ranking" or "alpha ranking" system utilized to evaluate and compare the performance of employees. According to plaintiff, this forced ranking system was implemented in early 2002. Under this system, managers were required to rank the performance of each employee in his or her department as compared to all other employees in the department. The ratings given to employees under the new system were an important factor in determining which employees would be terminated during the RIF. Prior to the implementation of the forced ranking system, each employee was simply given an overall performance rating on a scale of 1 to 5 with the vast majority of employees receiving a "3" rating for "fully meeting" Sprint's expectations. According to plaintiff, older employees who had previously received high ratings under the old system were less likely to receive high rat-

ings under the new system than were younger employees. Similarly, plaintiff alleges that older employees who had previously received "3" ratings under the old system were more likely to receive lower ratings under the new system than younger employees. Finally, plaintiff alleges that Sprint conducted a review of its forced ranking system which revealed that the system was biased against older employees.[4]

*Discussion*

In her motion for provisional certification of this action as a collective action, plaintiff asserts that she is similarly situated to the opt-in plaintiffs and potential opt-in plaintiffs in that she and the plaintiffs were all terminated as a result of Sprint's reduction in force occurring from October 2001 through March 2003; were subjected to the same "displacement guidelines" and "reduction guidelines" utilized by Sprint management in determining which employees to select for termination during the RIF; and were subjected to the same performance rating systems. Sprint opposes provisional certification of the class.

The court readily concludes that provisional certification of this action is appropriate for purposes of sending notice to potential class members. Clearly, plaintiff's first amended complaint contains detailed allegations, supported by affidavits, that the putative class members were "together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102. According to plaintiff's first amended complaint, Sprint intentionally treated younger employees more favorably than older employees in connection with its reduction in force by trans-

4. In addition, plaintiff has submitted to the court the affidavit of Sharon Louk, a former management-level employee with Sprint. Ms. Louk's affidavit describes, among other things, her personal knowledge of various age-based comments made by certain Sprint managers during discussions concerning which employees to select for termination in the RIF, including statements such as "we need younger blood;" older employees "don't have what it takes;" and younger employees "have more potential." Sprint moves to strike the affidavit based on plaintiff's failure to disclose Ms. Louk as a witness pursuant to Rule 26(a)(1) until the day before plaintiff filed her motion for provisional certification and,

thus, Sprint was denied the opportunity to interview or depose Ms. Louk during the discovery period. The motion is denied as moot because the court finds that plaintiff has satisfied the standard for provisional certification even in the absence of Ms. Louk's affidavit. Stated another way, the court has not relied on Ms. Louk's affidavit in determining that provisional certification is appropriate. However, Sprint should have ample opportunity to depose Ms. Louk during the next phase of discovery and, thus, will not likely be able to demonstrate any prejudice should plaintiff seek to utilize Ms. Louk's affidavit in support of final certification.

ferring younger employees into "safe" positions; by transferring older employees to positions that were marked for elimination; by adopting an age-biased performance rating system knowing that older employees would not fare as well as younger employees under the system; and by providing decisionmakers with age-related information about employees for use in making termination decisions. These allegations are more than sufficient to support provisional certification. *See, e.g., Vaszlavik,* 175 F.R.D. at 678–79 (concluding that conditional certification for notice purposes was warranted based on plaintiffs' allegations that they were victims of a plan by defendant to eliminate older workers through reductions-in-force); *Sperling v. Hoffmann–La Roche, Inc.,* 118 F.R.D. 392, 406–07 (D.N.J.1988) (concluding that certification for purposes of sending notice was appropriate where plaintiffs alleged that defendant discriminated against older workers in implementing its reduction in force).

Sprint urges that conditional certification is inappropriate because plaintiff has not come forward with evidence establishing a pattern and practice of age discrimination. As the court recently explained in denying without prejudice Sprint's motion for partial summary judgment on the issue of pattern and practice, discovery has not yet been completed on the pattern and practice issue (indeed, full scale discovery on the issue has not even been conducted) and any arguments concerning plaintiff's evidence of a pattern and practice of discrimination are premature. Moreover, as explained by Judge Babcock in *Vaszlavik,* whether plaintiff can meet her burden of establishing a pattern and practice of discrimination "is irrelevant to the question of 216(b) certification" as "the liability phase of a pattern and practice action is unaffected by the number of plaintiffs asserting the claim." 175 F.R.D. at 680. As Judge Babcock reasoned:

The sole issue in the liability phase is whether defendant engaged in a pattern and practice of discrimination. At that stage, plaintiffs are not required to provide specific evidence that they were individually discriminated against. Therefore, phase one of the trial will not be affected by the expansion of this claim from eleven named plaintiffs to the hundreds who might be encompassed by the proposed class. Any disparities among the employment situations of the individual plaintiffs are irrelevant during the liability phase, judicial economies are clearly served by proceeding collectively, and the defendant is not prejudiced. This represents the epitome of similarly situated plaintiffs.

*Id.* (citation omitted). For these reasons, the court rejects Sprint's argument that conditional certification is inappropriate in light of the alleged deficiencies in plaintiff's pattern and practice evidence.

Sprint also contends that conditional certification is inappropriate because plaintiff cannot establish that she is "similarly situated" to the opt-in plaintiffs or to any potential opt-in plaintiffs. In support of this argument, Sprint focuses on the dissimilarities between plaintiff and any present or potential opt-in plaintiffs. According to Sprint, plaintiffs and the opt-ins have vastly different lengths of service and performance ratings, come from different business units, held different positions and worked under different managers. Sprint also highlights that plaintiff and the opt-ins were terminated by different decisionmakers and that the termination decisions were made for a variety of different reasons. While any differences between and among plaintiff and the opt-ins may be relevant after discovery is completed and the court makes a conclusive determination of whether the plaintiffs are "similarly situated" upon revisiting the certification issue, such differences are simply not relevant at the notice stage when plaintiff, as here, has set forth substantial allegations that all plaintiffs were subjected to a pattern and practice of age discrimination. *See Thiessen,* 267 F.3d at 1103, 1105 (disparate factual and employment settings of individual plaintiffs and various defenses available to defendant are considered by court after discovery has been completed and court is analyzing the "similarly situated" requirement under a stricter standard). Thus, the differences between and among plaintiff and the opt-ins as described by Sprint are not fatal to plaintiff's motion for provisional certification. *See Vaszlavik,* 175 F.R.D. at 678–79 (rejecting

defendant's argument that plaintiffs were not similarly situated because plaintiffs worked in markedly different circumstances and positions; concluding that despite any differences, plaintiffs were "similarly situated" for notice purposes in light of substantial allegations that they were all victims of a pattern and practice of age discrimination).

Sprint's final argument in opposition to plaintiff's motion is that the "similarly situated" standard, even at the notice stage, is not met by showing only that all plaintiffs were terminated during a reduction in force. According to Sprint, if such a showing were sufficient to support conditional certification, then every reduction-in-force would give rise to a collective action. Of course, plaintiff here has not alleged simply that all potential plaintiffs were terminated during Sprint's reduction in force. Rather, she has alleged, and has supported her allegations with affidavits, that the potential plaintiffs were terminated during the reduction in force as a result of Sprint's pattern and practice of discriminating against older workers in implementing the reduction in force. These allegations are sufficient for purposes of sending notice to the potential class and Sprint's argument otherwise is not persuasive.

Having concluded that this action should be conditionally certified for purposes of notifying potential members of the class, the court turns to the specific notice proposed by plaintiff. The notice that plaintiff seeks to send out to potential class members is attached as Appendix A to plaintiff's motion for provisional certification. Plaintiff asserts that she is ready to send this notice immediately upon approval from the court as she has already identified the names of all potential class members. While Sprint did not object in its brief to the form or the content of plaintiff's proposed notice, counsel for Sprint notified the court by letter this week that Sprint would like the opportunity to "comment on any notice" that would be sent to potential plaintiffs in the event the court conditionally certifies this action as a collective action.

The court is somewhat puzzled by Sprint's failure to include in its response to plaintiff's motion any objections it might have to plaintiff's proposed notice-particularly as plaintiff expressly moves the court to approve the specific notice that she has attached to her motion. Nonetheless, the court will provide Sprint an opportunity to file objections to the notice because the court, in setting the first phase scheduling order in this case, focused solely on the conditional certification issue and did not discuss with the parties any specific procedure for developing the actual notice that would ultimately be distributed upon certification. Thus, Sprint shall file any objections to the notice attached as Appendix A to plaintiff's motion by 5:00 pm on Wednesday, July 7, 2004 and the court will take up those objections, and any response plaintiff might have thereto, during a telephone conference that the court hereby sets for Thursday, July 8, 2004 at 3:00 p.m.

One additional motion remains pending before the court-plaintiff's motion to unseal the record with respect to her motion for provisional certification. By way of background, Sprint requested a telephone conference with the court on the day prior to plaintiff's deadline for filing her motion for provisional certification. During that conference, Sprint made an oral motion to require that plaintiff file under seal her motion for provisional certification and all supporting materials. Because the court did not have time to review plaintiff's filings (as Sprint's motion was made one day prior to plaintiff's anticipated filing) to ascertain whether any particular documents should be filed under seal, the court granted defendant's motion but invited plaintiff to file a motion to unseal that the court could analyze in connection with the motion for provisional certification. Plaintiff has now filed that motion.

In response to plaintiff's motion, Sprint concedes that the vast majority of the documents filed by plaintiff should be unsealed but contends that Exhibits 73 and 74 to plaintiff's motion and the affidavits of Ms. Louk, Mr. Borel and Ms. Mendelsohn should remain sealed for the following reasons: Exhibits 73 and 74 are spread sheets that reflect the names, performance ratings and social security numbers of non-party employees; the affidavit of Ms. Louk includes infor-

mation regarding compensation paid to a Sprint contractor; the affidavit of Mr. Borel includes information regarding the disability status and performance rating of a non-party employee; and the affidavit of Ms. Mendelsohn includes information regarding the performance ratings of two non-party employees. In reply, plaintiff agrees to redact the social security numbers from Exhibits 73 and 74. Thus, the only issue that remains in dispute is whether the information concerning the performance ratings of certain non-party employees, the disability status of one non-party employee and the compensation of a non-party contractor should remain sealed.

As the party seeking to keep portions of the record sealed, Sprint has the burden of showing that its interest in sealing the information concerning the non-party employees outweighs the public's right of access to judicial records. *See, e.g., Bryan v. Eichenwald,* 191 F.R.D. 650, 652 (D.Kan.2000). Stated another way, Sprint must demonstrate a public or private harm sufficient to overcome the public's right of access. *See id.* Sprint has not met its burden and the court concludes that the public's right of access to the information contained in the documents outweighs any potential (but unlikely) harm that might result in disclosing the information. For example, Sprint contends that Ms. Mendelsohn's affidavit contains information relating to the performance ratings of two non-party employees. Specifically, Ms. Mendelsohn avers that the two employees "were rated in job performance the same as I was, Fully Met Expectations." The court can discern no harm that might come to the two employees by such a disclosure-particularly because the employees' ratings were positive-and Sprint fails to identify any such harm, pointing only to an individual's general right to privacy in such information. Similarly, Mr. Borel avers that a particular employee who was over the age of 40 "was on short-term disability leave when she was laid-off . . . . [She] had received good ratings during her 15 year employment at Sprint [b]ut her rating was changed to an adverse rating after she was laid off by . . her manager." Again, the court discerns no harm that might come to the individual identified in Mr. Borel's affidavit, as the clear suggestion is that the individual was a good performer but received an adverse rating solely on the basis of her age. Moreover, the affidavit does not specify or even suggest the basis for the employee's short term disability leave and, accordingly, the court discerns no reason to seal the mere reference to the employee's leave.

With respect to the reference in Ms. Louk's affidavit to the compensation paid to a particular contractor, Sprint has not explained why this information should be protected (and has failed to suggest any particular harm that might come from disclosure of the information), other than its general argument that the information is "private." However, the contractor identified in Ms. Louk's affidavit has not filed an affidavit stating she is concerned about having the information available to the public and Sprint's vague interest in keeping the information sealed does not outweigh the public's right of access. Finally, with respect to the performance ratings contained in Exhibits 73 and 74, Sprint again has not explained why the information should be kept under seal. In fact, the information contained in Exhibits 73 and 74 is the standard information found in any employment discrimination case when one employee seeks to compare his or her performance to other employees. Thus, in the absence of any persuasive argument why the information should be protected, the court is unwilling to keep the documents under seal.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for leave to file an amended complaint (doc. # 254) is **granted** and plaintiff shall file her First Amended Complaint attached as Exhibit A to her motion **within 10 days of the date of this order;** plaintiff's motion for provisional certification, to join additional plaintiffs and to send notice (doc. # 256) is **granted;** defendant's motion to strike the affidavit of Sharon Louk (doc. # 265) is **denied as moot;** and plaintiff's motion to unseal recent court filings (doc. # 262) is **granted.**

The court will conduct a telephone conference on **Thursday, July 8, 2004 at 3:00 p.m.** to discuss the form and content of the notice

that plaintiff will distribute to potential class members.

With respect to further scheduling in this action, and as set forth in paragraph 6 of the first phase scheduling order, the parties are directed to meet and confer on a schedule relating to case management, including among other issues, discovery limits and deadlines, expert discovery, and procedures and deadlines for further dispositive motions, including a motion to decertify. No later than 10 days after conferring, the parties will file with the court either a stipulated case management schedule or respective motions for entry of their own proposed scheduling orders, explaining to the court why the parties could not reach agreement.

**IT IS SO ORDERED.**