**Rondy BROWN, Jr., on behalf of himself and all others similarly situated, Plaintiff,**

v.

**MONEY TREE MORTGAGE, INC., et al., Defendants.**

**No. 03–2651–JWL.**

United States District Court, D. Kansas.

Aug. 23, 2004.

---

19. *See* Addendum (doc. 32).

20. *See* Notice of Service of Defs.' Supp. Disclosures (doc. 33).

21. *See* Supplement to Mot. in Limine and for Sanctions (doc. 30) at p. 1.

Barry R. Grissom, B. Joyce Yeager, Yeager Law Firm, LLC, Overland Park, KS, for Plaintiff.

Patrick Ross Miller, DeZube Miller, PA, Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, Chief Judge.

This lawsuit arises from the alleged practice of defendant Money Tree Mortgage, Inc. (Money Tree)[1] of not paying its non-exempt employees overtime compensation, and instead telling them that in lieu of being paid overtime they would accrue flex time but then not allowing them to use their accrued flex time. Plaintiff Rondy Brown, Jr. is a former employee of Money Tree, and he asserts a claim for unpaid overtime compensation under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.*, and state law claims for breach of express and implied contract and fraud. The matter is presently before the court on plaintiff's motion for class certification (doc. 9). By way of this motion, plaintiff seeks certification of a class of present and former employees of Money Tree for the last three years who were employed at Money Tree's locations in Olathe, Kansas, and Woodstock, Georgia, and who were denied overtime compensation for hours worked beyond forty hours per week. For the reasons explained below, the court will grant the motion in part and conditionally certify a collective action for plaintiff's FLSA claim. The court will otherwise deny the motion without prejudice to plaintiff refiling a Rule 23 motion for class certification on plaintiff's state law claims at a later date.

### I. Class Certification of Plaintiff's FLSA Claim

#### A. Legal Standard for Certification

■ Plaintiff moves for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. A class certified under Rule 23(b)(3) includes all class members who do not opt out of the class. *See* Fed.R.Civ.P. 23(c)(3) (providing that a judgment in a Rule 23(b)(3) class action applies to all class members to whom notice was directed and who did not request exclusion from the class). In sharp contrast, plaintiff's FLSA claim is governed by FLSA § 16(b), which provides that an FLSA class only includes members who opt *in* to the class. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [§ 216(b)] action unless he gives his consent in writing to become such a party and such consent is filed in the

---

1. Plaintiff also brought this action against individual defendants Todd Webster, Randy A. Webster, and Leslie A. Webster, who are allegedly Money Tree's three shareholders. Todd Webster managed Money Tree's office in Olathe, Kansas, and Randy Webster managed Money Tree's office in Woodstock, Georgia. Leslie Webster was active in the management of the corporation, and is also Todd and Randy's mother. Plaintiff intends to seek to pierce the corporate veil of Money Tree in order to obtain a judgment against these three individual defendants. Insofar as the court's resolution of the current motion is concerned, however, for the sake of simplicity the court will simply refer to Money Tree as the defendant.

court in which such action is brought."). Because of the "fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b) . . . [i]t is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits." *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir.1975) (per curiam). For this reason, the Courts of Appeals have uniformly recognized that the appropriate procedural vehicle for certifying a class on an FLSA claim is the opt-in mechanism of FLSA § 16(b), not Rule 23. *See, e.g., Prickett v. DeKalb County,* 349 F.3d 1294, 1296 (11th Cir.2003) (per curiam) (explaining that "FLSA plaintiffs may not certify a class under Rule 23" because of the opt-in requirement of FLSA § 16(b)), *cert. denied,* —— U.S. ——, 124 S.Ct. 2873, 159 L.Ed.2d 776 (2004); *King v. Gen. Elec. Co.,* 960 F.2d 617, 621 (7th Cir.1992) (stating, in a case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, which adopts the FLSA collective action procedure, that the FLSA § 16(b) opt-in procedure preempts Rule 23's class action procedure); *Lusardi v. Lechner,* 855 F.2d 1062, 1068 n. 8 (3d Cir. 1988) ("Courts have generally recognized that Rule 23 class actions may not be used under FLSA § 16(b)."); *cf. Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir.2001) (stating that "[u]nlike class actions under Rule 23, '[n]o employee shall be a party plaintiff to any such action unless he' " opts in (quoting FLSA § 16(b); emphasis added; first brackets added; second brackets in original)), *cert. denied* 536 U.S. 934, 122 S.Ct. 2614, 153 L.Ed.2d 799 (2002). The court will therefore construe the aspect of plaintiff's motion in which he seeks class certification on his FLSA claim as a motion to certify a collective action pursuant to FLSA § 16(b).[2]

■ The FLSA provides for a class action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step ap-

proach in determining whether plaintiffs are "similarly situated" for purposes of FLSA § 16(b). *See Thiessen,* 267 F.3d at 1105 (applying FLSA § 16(b) in an ADEA case); *see generally, e.g., Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 484–85 (D.Kan. 2004) (explaining that the court applies this two-step approach in an ADEA case). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are similarly situated. *Thiessen,* 267 F.3d at 1102. That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213–14 (5th Cir.1995). For conditional certification at the notice stage, a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen,* 267 F.3d at 1102 (quotation omitted; brackets in original). The standard for certification at this notice stage, then, is a lenient one that typically results in class certification. *See Mooney,* 54 F.3d at 1214; *Williams,* 222 F.R.D. at 485; *Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 568 (N.D.Ala.1995), *aff'd,* 114 F.3d 1202 (11th Cir.1997) (unpublished table opinion).

At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are similarly situated using a stricter standard. *Thiessen,* 267 F.3d at 1102–03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit. *Id.* at 1103.

---

2. Interestingly, plaintiff recognized in his complaint that FLSA § 16(b) is the appropriate procedural vehicle for certifying a class on his FLSA claim. He also acknowledged in his memorandum in support of his motion for class certification that he is seeking a proposed Rule 23 opt-

out class that parallels the opt-in collective action. Thus, the court believes that counsel for plaintiff simply mistakenly sought relief under Rule 23, perhaps due to confusion regarding the appropriate procedure for seeking to certify a class for an FLSA claim and state law claims.

■ This case is in its early stages. Although the lawsuit was filed approximately eight months ago on December 23, 2003, plaintiff did not complete service of process on all of the defendants until three months later in March of 2004. Plaintiff filed his motion to certify the class on May 24, 2004, the day before the initial Rule 16(b) scheduling conference on May 25, 2004. Since then, the parties have engaged in some written discovery. Meanwhile, they filed their response and reply memoranda associated with the current motion, and this motion has been at issue only for approximately one month. Further, the scheduling order did not impose a discovery deadline, it did not set a date for the final pretrial conference, and it did not set a trial date because the court contemplated entering an amended scheduling order after the court rules on the current motion for class certification. In any event, this case certainly has not progressed to the conclusion of discovery, at which point the court would apply the "second stage" analysis standard. Thus, the court will analyze plaintiff's motion under the lenient "notice stage" standard described above and, in doing so, looks to the substantial allegations in plaintiff's first amended complaint and various affidavits filed by plaintiff. *See Thiessen,* 267 F.3d at 1102; *see, e.g., Williams,* 222 F.R.D. at 485–88 (making a notice stage determination that the plaintiffs were similarly situated based on detailed allegations in the pleadings as supported by affidavits); *Sperling v. Hoffmann–La Roche, Inc.,* 118 F.R.D. 392, 406–07 (D.N.J.) (same), *aff'd,* 862 F.2d 439 (3d Cir.1988), *and* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

### B. *Background*

Plaintiff's first amended complaint (hereinafter referred to as, simply, the complaint) alleges that he was formerly employed by Money Tree at its location in Olathe, Kansas. As a Money Tree employee, he routinely worked more than forty hours per week. According to the allegations in the complaint, Money Tree engaged in a pattern and practice of not paying its employees required overtime compensation in violation of the FLSA. Money Tree's other employees were similarly situated in that they are or were employed in similar positions. The complaint further alleges that this pattern and practice constituted a breach of the express and implied terms of Money Tree's employment contracts with its employees, and that Money Tree engaged in a pattern and practice of fraud by representing to its employees that in lieu of being paid overtime they would accrue flex time that could be used at the employees' election even though Money Tree knew the employees held non-exempt status; Money Tree made these representations to induce prospective job applicants and to mislead its employees into believing that they were receiving a benefit in return for foregoing overtime pay; and employees were then discouraged from using their accrued flex time and were even told that they would be terminated if they attempted to use it.

In support of the allegations in the complaint, plaintiff has submitted affidavits from two former employees of Money Tree. The first, James Derry, states that he worked for Money Tree as a sales manager of the Olathe office for approximately four or five months in 2003. According to Mr. Derry's affidavit,

> [e]mployees were not paid for the hours they worked. There were no work schedules and nothing was ever put in writing. I worked more than 40 hours in a week. The employees were never paid for more than 40 hours a week. The owners were also robbing the loan closers. The processors actually turned in time sheets for the hours they actually worked. They were paid for 40 hours and this 40 hours was reported no matter how many hours they worked. Inna Veckerman would use a white out pen to change the time sheets and then photocopy them so that they looked like originals. Some time sheets were also shredded if they had more than 40 hours a week on them. Employees were told they could take "comp time" for the overtime they worked but they were never allowed any time off. The sales people did not keep time sheets.

Derry Aff. ¶ 10, at 3.

The second affidavit is from Sheila Hicks, who states that she worked for Money Tree in September and October of 2003. She

states that she was "told if I worked more than 40 hours, they would amass time to take later within a two week period." Hicks Aff. at 2. She further explains that

> [t]he books were handled through the Georgia office. Inna Vergerman was the individual in charge. Inna was supposed to be the office manager. Time sheets were turned into her. She conducted initial interviews for employment. She told applicants they would get $400 a week.
>
> When Inna hired me, I was told I would get $400 a week. No compensation was mentioned for more than 40 hours of work and no comp time was mentioned.... I worked more than 40 hours a week three of the eight weeks I was employed. I turned in time slips to Inna. If I worked less than 40 hours, my pay was deducted. I received $10 an hour for hours I worked under 40.
>
> Inna said if I worked more than 40 hours in a week and kept track of it, I would take time out of the office if it was taken in the same pay period. It was dropped if not taken and referred to as donated hours.
>
> A girl named Shellie who worked there took time off. She left the company because she took time off. They refused to pay her, so she left.
>
> I asked about overtime pay and I told Inna if I worked more than 40 hours it was against the law not to be paid for it. She said I was wrong. She said it was company policy and that was how I would be paid.

*Id.* at 4–5.

### C. *Discussion*

■ The court readily concludes that conditional certification of this action is appropriate for purposes of sending notice to potential class members. Clearly, plaintiff's complaint contains detailed allegations, supported by affidavits from Mr. Derry and Ms. Hicks, that these three were "together the victims of a single decision, policy, or plan," *Thiessen,* 267 F.3d at 1102, which was Money Tree's alleged pattern and practice of not paying its employees overtime. Each of them worked in excess of forty hours per week and were not paid any overtime compensation, and plaintiff's complaint alleges that the other Money Tree employees were employed in similar positions. Thus, plaintiff is similarly situated to other members of the putative collective action, which includes present and former Money Tree employees who were employed in similar positions and who were denied overtime compensation for hours worked beyond forty hours per week.[3] *See generally, e.g., Williams,* 222 F.R.D. at 485–88 (granting conditional class certification at the notice stage where the detailed allegations in the first amended complaint, supported by affidavits, demonstrated that the plaintiffs were similarly situated to other employees in the sense that all were terminated during a reduction in force as a result of the defendant's alleged pattern and practice of discriminating against older workers); *Jacobsen v. Stop & Shop Supermarket Co.,* No. 02 Civ. 5915, 2003 WL 21136308, at *1– *4 (S.D.N.Y. May 15, 2003) (granting conditional class certification at the notice phase where the plaintiff demonstrated that he was similarly situated to other employees and all were victims of the employer's practice of not paying overtime); *Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351 (S.D.N.Y.1999) (same).

■ Money Tree has raised a variety of arguments in opposition to plaintiff's motion, the overwhelming majority of which are without merit or simply misplaced in light of the fact that the court is construing the motion as a motion to certify a collective action pursuant to FLSA § 16(b). For example, Money Tree argues that class certification is inappropriate because whether each putative class member will have a meritorious claim under the FLSA will depend on whether the

---

3. Plaintiff's proposed class definition includes all Money Tree employees who were denied overtime compensation, and he alleges that all of the other putative class members were employed in similar positions. Money Tree does not attempt to refute this allegation nor does it argue that the court should revise plaintiff's proposed class definition to exclude any particular category of Money Tree employees. The court anticipates that the parties will file a motion for reconsideration if they believe that the court needs to address this issue.

employee worked overtime hours. The proposed class definition, however, only encompasses those employees who worked more than forty hours per week. Money Tree also points out that the court will have to determine each employee's overtime hours worked in assessing damages, but "[i]t is well established that individual questions with respect to damages will not defeat class certification ... unless that issue creates a conflict which goes to the heart of the lawsuit." *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 629 (D.Colo.2002) (quotation omitted; citing case law). Money Tree also argues that class certification will depend on legal and factual issues unique to each employee such as whether the employee was an exempt employee; whether the employee was engaged in work activities; and whether Money Tree knew of the employee's time at work. As explained above, however, the court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the "second stage" analysis after the close of discovery. *Thiessen,* 267 F.3d at 1103; *Williams,* 222 F.R.D. at 487–88. All that is required for conditional certification at the notice stage is "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen,* 267 F.3d at 1102 (quotation omitted). As discussed previously, plaintiff has made this required showing.

■ Money Tree also argues that Mr. Brown is not an adequate class representative because he was employed by Money Tree for only seven weeks and therefore his damages would be rather limited compared to those of other class members who were employed by Money Tree for longer periods of time. Although FLSA § 16(b) does not expressly incorporate Rule 23(a)(4)'s adequacy-of-representation requirement, the adequacy of a class counsel or a class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented. *See White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1315 (M.D.Ala.2002); *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249,

263 (S.D.N.Y.1997). With that being said, however, the court is unpersuaded that the particular concern articulated by Money Tree in this regard is sufficient to render plaintiff an inadequate class representative. The FLSA allows an action under § 16(b) to be brought "by any one or more employees." 29 U.S.C. § 216(b). It does not contain any language from which it can be implied that an action must be brought by the employee who suffered the greatest damages from an employer's unlawful practice.

■ In addition, Money Tree argues that this court is not the proper venue for a class action because the vast majority of Money Tree's employees were located in Georgia. The FLSA does not contain a special venue provision, *see* 29 U.S.C. § 216(b) (providing that an FLSA action may be brought "in any Federal or State court of competent jurisdiction"), and therefore the general venue provision, 28 U.S.C. § 1391, governs venue for FLSA claims. *See Bredberg v. Long,* 778 F.2d 1285, 1287 (8th Cir. 1985); *Stein v. Chemtex Int'l, Inc.,* No. 04–001, 2004 WL 722252, at *2 (D.Del. Mar.31, 2004); *Goldberg v. Wharf Constructers,* 209 F.Supp. 499, 501 (N.D.Ala.1962). In this case, venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Olathe, Kansas. To the extent that Money Tree believes Georgia would be a more convenient forum, its remedy would be to file a motion to transfer pursuant to 28 U.S.C. § 1404(a).

Money Tree also argues that plaintiff's motion for class certification is premature because Money Tree has not yet had an opportunity to conduct discovery sufficient to adequately respond to plaintiff's motion for class certification. As explained above, however, class certification involves a two-step approach that adequately addresses this concern. The court's ruling at this time does not determine how this case will ultimately proceed because Money Tree will have an adequate opportunity to ask the court to engage in a second-phase analysis after it has had the opportunity to conduct discovery.

Accordingly, plaintiff's motion for class certification is granted as to his FLSA claim because the court finds that plaintiff has met his burden of demonstrating that he is similarly situated with other members of the proposed collective action in the sense that they were all allegedly victims of Money Tree's alleged pattern and practice of not paying overtime compensation. The court will therefore conditionally certify the collective action for purposes of sending notice.

## II. Rule 23 Class Certification of Plaintiff's State Law Claims

The remaining issue before the court, then, is the aspect of plaintiff's motion in which he seeks class certification of his state law breach of contract and fraud claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. As discussed previously, plaintiff did not utilize the appropriate procedural vehicle for seeking class certification of his FLSA claim. Presumably because of this, the parties also did not recognize the fact that certifying a class jointly under FLSA § 16(b) and Rule 23 raises a variety of procedural considerations, including the threshold issue of whether the court should exercise supplemental jurisdiction over the putative Rule 23 class action on plaintiff's state law claims. *See De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 307–12 (3d Cir.2003) (holding the district court abused its discretion by exercising supplemental jurisdiction over Rule 23 class action for state law claims that substantially predominated over FLSA collective action); *Bartleson v. Winnebago Indus.,* 219 F.R.D. 629, 637–38 (N.D.Iowa 2003) (holding the magistrate judge's decision was contrary to law insofar as it allowed leave to amend for plaintiffs who were not already asserting FLSA claims because the court would lack supplemental jurisdiction over those claims and hence those claims were futile); *Jackson v. City of San Antonio,* 220 F.R.D. 55, 58–61 (W.D.Tex.2003) (declining to exercise supplemental jurisdiction over pendent plaintiffs who did not opt in to FLSA claim); *see also McClain v. Leona's Pizzeria, Inc.,* No. 04C1913, 2004 WL 1745750, at *1–*4 (N.D.Ill. July 30, 2004) (denying Rule 23 motion for class certification where court had previously certified a collective class on FLSA claim because Rule 23 was not a superior method for adjudicating the state law claims); *Goldman v. RadioShack Corp.,* No. 03–CV–0032, 2003 WL 21250571, at *1–*11 (E.D.Pa. Apr. 16, 2003) (granting conditional certification of FLSA collective action and postponing a decision on Rule 23 class certification of state claims because further discovery was needed regarding the predominance test of Rule 23(b)(3)); *De La Fuente v. FPM Ipsen Heat Treating, Inc.,* No. 02 C 50188, 2002 WL 31819226, at *1–*2 (N.D.Ill.Dec.16, 2002) (granting § 16(b) certification and denying Rule 23 motion without prejudice to re-file after the close of the opt-in period for the FLSA collective action); *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 264–68 (D.Conn. 2002) (certifying Rule 23 class where FLSA class was previously certified); *Ballaris v. Wacker Siltronic Corp.,* No. 00–1627, 2002 WL 926272, at *3 (D.Or. Feb.7, 2002) (noting the absence of a pendent-party issue because the plaintiff was intending to move for certification of a Rule 23 class on state law claims that only consisted of the FLSA opt-in members); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 95–96 (S.D.N.Y.2001) (certifying Rule 23 class for state law claims where approximately 350 plaintiffs had already filed consents for collective action on FLSA claim). Because the parties have not addressed these important issues, the court declines to grant plaintiff's motion for certification of a Rule 23 class on his state law claims based on the record currently before the court. The court will, however, deny the motion without prejudice to plaintiff re-filing a Rule 23 motion for class certification of his state law claims at a later date, perhaps (for reasons suggested by some of the courts in the cases cited *supra*) after the scope of the opt-in class has been ascertained.

## III. Conclusion

In conclusion, the court grants plaintiff's motion for class certification with respect to plaintiff's FLSA claim and hereby conditionally certifies a class pursuant to FLSA § 16(b) for purposes of sending notice of the action to potential collective action members. Plaintiff's motion is otherwise denied without

prejudice to plaintiff re-filing a Rule 23 motion for class certification of his state law claims at a later date. With respect to further scheduling of this action, the parties shall abide by paragraph 4(b) of the scheduling order in this case and, in doing so, shall confer and include in their submission to the magistrate judge a proposed schedule relating to management of the collective action including procedures and deadlines for carrying out the opt-in phase of this litigation and establishing deadlines for filing a motion to decertify the collective action and to re-file a Rule 23 motion to certify a class for the state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for class certification (doc. 9) is granted in part and denied in part without prejudice to be re-filed at a later date.