765 P.2d 1178

**In the Matter of the Adoption Petition of Vyril Van BEGAY and Shawna R. Begay.**

**Vyril Van BEGAY and Shawna R. Begay, Petitioners–Appellees,**

v.

**Karen RAEL, Movant–Appellant,**

**State of New Mexico, ex rel. Human Services Department, Intervenor on Appeal,**

**Picuris Pueblo, Intervenor on Appeal.**

**No. 10149.**

Court of Appeals of New Mexico.

Sept. 22, 1988.

Certiorari Denied Nov. 17, 1988.

George W. Kozeliski, Gallup, for petitioners-appellees.

Mary Lou Carson, Indian Pueblo Legal Services, Inc., San Juan Pueblo, for movant-appellant.

Anthony F. Little, Bernalillo, for intervenor, Picuris Pueblo.

Hal Stratton, Atty. Gen., Simon Romo, Sp. Asst. Atty. Gen., Human Services Dept., Albuquerque, for intervenor, Human Services Dept.

## OPINION

BIVINS, Judge.[1]

Karen Rael (Rael), a Picuris Pueblo Indian and natural mother of the child sought to be adopted in this proceeding, appeals from the order of the district court of McKinley County (state court) denying her motion to dismiss. The state court's order contains the requisite language of NMSA 1978, Section 39–3–4, that the court "believes the Order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order ... may materially advance the ultimate termination of the litigation."

In her application for interlocutory appeal to this court, see SCRA 1986, 12–203, Rael identified the question for review as being: "[W]hether it was error for the [state] court to deny [Rael's] motion to dismiss the adoption proceedings for lack of subject matter jurisdiction as required by * * * the Indian Child Welfare Act of 1978 [ICWA] * * * * *" She amplified this issue by stating six reasons why the state court erred. Summarized, these include the assertion that under the Act, 25 U.S.C. Section 1911(a) (1982), exclusive jurisdiction

was with the Picuris Tribal Court since the child's domicile was within the reservation; that since the tribal court had determined that Rael was domiciled on the reservation at all relevant times, its order was entitled to full faith and credit; and that Rael's earlier consent to adoption was invalid because the state court approving consent lacked jurisdiction. The prospective adoptive parents, Vyril and Shawna Begay (the Begays), responded and, while not agreeing to error, consented to an interlocutory appeal. This court granted the application and after originally proposing summary reversal, assigned the case to the general calendar.

Subsequently, the Begays moved to include additional issues: whether the Picuris Pueblo (Tribe) must have joined in the motion to dismiss in order to give Rael standing, and whether Rael can withdraw her consent to adoption pursuant to 25 U.S.C. Section 1913 (1982). This court denied the motion because those issues appeared to be included in the issue as framed in the application for interlocutory appeal. These issues were thoroughly briefed and orally argued, not only by the parties but by the Human Services Department and the Tribe, which moved to intervene on appeal. For the reasons hereinafter stated, we decline to address the numerous issues raised by the parties. Instead, we confine ourselves to what we understand was the basis for the state court's ruling denying Rael's motion to dismiss: that she had no standing absent the Tribe joining in the motion. As to that question, we hold that the Tribe's joinder was not required and, therefore, reverse and remand for consideration of the jurisdictional issue.

## FACTS

In October 1982, after an eight-year stay in California, Rael returned to her previous home on the Picuris Pueblo in New Mexico. She obtained a residence there for herself and her two daughters. Three months later, in January 1983, Rael went to Taos

---

1. The court acknowledges the work and valuable contributions made by Hon. Lorenzo F. Garcia, who, before his retirement from the bench, had been assigned to this case and participated in the oral argument.

where she stayed with a friend during the remainder of her pregnancy with the child sought to be adopted here. Her eldest daughter, aged six, remained at the Picuris Pueblo with Rael's mother. Concerned with her ability to raise a third child as a single parent, Rael contacted the state's Human Services Department (HSD) in mid-May regarding the placement of her child for adoption. The child was born out of wedlock in late May 1983 at the Indian Health Service Hospital in Santa Fe. Three days after the child's birth, Rael voluntarily gave physical custody of the child to HSD and the child left the hospital in the care of HSD social workers. Thereafter, Rael returned to the Picuris Pueblo where she has since remained.

In June 1983, Rael signed a relinquishment of parental rights and consent to adoption in Santa Fe County District Court. At that time, Rael also signed a document entitled "Affidavit and Waiver of Rights Under the [ICWA]." In early October 1983, in accordance with Rael's request that the child be placed with a non-Picuris Indian family, HSD placed the child for adoption in the custody of the Begays, members of the Navajo Tribe. The child has remained with the Begays since that day. In November 1985, the natural father's parental rights were terminated by state district court order. In September 1986, the Begays filed a petition for adoption of the child in McKinley County District Court. Although notice of the hearing was given to the Tribe, it did not enter an appearance. The Tribe, however, contacted Rael concerning the adoption and Rael subsequently filed an affidavit in the adoption proceeding withdrawing her prior consent to adoption. Rael's withdrawal was made pursuant to 25 U.S.C. Section 1913(c), which provides:

> (c) Voluntary termination of parental rights or adoptive placement; withdrawal of consent; return of custody
>
> In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption,

as the case may be, and the child shall be returned to the parent.

Shortly thereafter, Rael filed a motion in the adoption proceeding requesting a dismissal of the proceeding and that custody of the child be immediately returned to her.

In January 1987, shortly before a scheduled hearing on her motion to dismiss, Rael obtained an order from the Picuris Tribal Court determining that she was, and had been at all times relevant to these proceedings, a domiciliary of the Picuris Pueblo. In February 1987, the Picuris Tribal Court judge filed an affidavit in McKinley County District Court certifying the tribal court's authority and willingness to assume jurisdiction over the proceedings.

In August 1987, Rael requested that the state court accord full faith and credit to the tribal court's determination concerning her domicile. That same month, the state court denied Rael's motion seeking dismissal of the adoption proceeding and requesting custody of the child be immediately returned to her. Consequently, Rael's full faith and credit motion was never addressed. Rael then filed her application for interlocutory appeal.

DISCUSSION

The Tribe, while not seeking intervention in the state court, filed a motion to intervene on appeal. We initially granted the Tribe status as an amicus curiae and now grant intervenor status.

■ In so holding, we must determine whether, by its failure to intervene in the October 1986 proceeding, the Tribe has waived its right to intervene on appeal. We hold it has not. 25 U.S.C. Section 1911(c) specifically provides that: "[T]he Indian custodian of the child and the Indian child's tribe shall have a right to intervene *at any point* in the proceeding." (Emphasis added.) We further note that courts have historically been reluctant to imply a waiver of Indian rights. *In re J.M.*, 718 P.2d 150 (Alaska 1986). It is well established that a waiver of Indian rights should not be easily inferred. *Id.* Because one of the objectives of the ICWA is to ensure that tribes have an opportunity to exercise

their rights under the Act, we conclude that a tribe's waiver of the right to intervene must be express and not based simply on its failure to intervene at the initial proceeding. *See id.* Accordingly, we grant the Tribe intervenor status on appeal.

■ With respect to Rael's motion to dismiss, the state court apparently made its ruling on procedural grounds. The Begays argued below and on appeal that Rael could not file the motion to dismiss the adoption proceedings but instead, given the precise wording of 25 U.S.C. Section 1914 (1982), must have been joined by the Tribe. It appears from a review of the hearing on the motion that the state court based its decision on this ground. Comments made by the state court judge at or near the conclusion of the hearing strongly indicate he thought the Tribe's joinder necessary and based his denial of Rael's motion on that ground. The state court commented, "I'm not going to take on domicile at this time." While oral remarks by the state court at the completion of the hearing do not constitute a decision, *see Getz v. Equitable Life Assurance Soc'y of U.S.*, 90 N.M. 195, 561 P.2d 468, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977), such remarks or statement may be useful when the basis for the decision is not made known by findings or otherwise. *See Ledbetter v. Webb*, 103 N.M. 597, 711 P.2d 874 (1985); *Hopkins v. Guin*, 105 N.M. 459, 734 P.2d 237 (Ct.App.1986).

25 U.S.C. Section 1914 provides:

Any Indian child who is the subject of any action for ... termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, *and* the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that [it violates sections 1911, 1912, and 1913 of this Act]. [Emphasis added.]

In statutory interpretation, we look not only to the language used but also to the objective sought to be accomplished and the wrong to be remedied. *See Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M.

216, 704 P.2d 1092 (1985); *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975).

In *In re Kreft*, 148 Mich.App. 682, 384 N.W.2d 843 (1986), the court was faced with the similar issue of whether, inter alia, the natural mother of the Indian child lacked standing to challenge alleged violations of the ICWA because her tribe had not joined in the appeal. The court determined that 25 U.S.C. Section 1914 defines a class of entities which may petition the court but it does not require that the child, parent or guardian, *and* the tribe join in the petition. The court noted that although use of the conjunction "and" instead of the disjunctive "or" created an ambiguity in the statute, ambiguous language in statutes must be construed to give effect to the legislature's intent. The *Kreft* court noted that the statute must be construed in light of the general purpose of the ICWA, which is to promote the stability and security of Indian tribes and their families. *See* 25 U.S.C. § 1902 (1982).

We hold that the rationale in *Kreft* is applicable here. The ICWA was enacted to protect the tribe, as well as individual Indian families. Requiring the participation of the child, parent or guardian, *and* the tribe in challenging the validity of an order would frustrate the spirit of the act. Accordingly, we reject the Begays' argument, and deem it unnecessary that all three entities participate in every proceeding. Accordingly, we must reverse the order based on this ground.

As to the substance of Rael's motion to dismiss, whether the state court has subject matter jurisdiction is dependent upon resolution of factual questions concerning the child's domicile. *See* 25 U.S.C. § 1911(a).

25 U.S.C. Section 1911 provides:

(a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe[.]

(b) Transfer of proceedings; declination by tribal court

In any State court proceeding for ... termination of parental rights to * * * an Indian child not domiciled or residing within the reservation, of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe[.]

Although requested by Rael, the state court made no express findings concerning domicile. Moreover, it appears from the record that a factual determination in this regard was not made.

█ We recognize that findings of fact and conclusions of law are not required when ruling on a motion. SCRA 1986, 1–052(B)(1)(a). However, where a ruling on a motion necessarily involves a determination of factual issues, express findings of fact are preferable. *See* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 52.08 (2d ed. 1988); *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). *Cf. Mathieson v. Hubler*, 92 N.M. 381, 588 P.2d 1056 (Ct.App.1978) (where there has been an evidentiary hearing on a motion, it is commendable practice to make findings and conclusions). In the absence of factual findings or some statement by the state court explaining the basis for its decision (including any factual determinations supporting the decision), a reviewing court is unable to decide an appeal without great difficulty. *See Williamson v. Tucker.*

While we note that an appellate court can make its own findings in certain limited situations, *see DesGeorges v. Grainger*, 76 N.M. 52, 412 P.2d 6 (1966), prudence suggests that, in this case, the district court should first make the factual determinations necessary to a ruling on the motion, and enter its order accordingly.

Similarly, while Section 39–3–4 does not explicitly require the district court to identify or specify the controlling question of law in the order, *see* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure: Jurisdiction* § 3929 at 144 (1977) (discussing 28 U.S.C. § 1292(b), permissive interlocutory appeals, which is similar to New Mexico's § 39–3–4), such identification would be useful to the reviewing court in order to clearly understand the basis for the order or decision. The case before us illustrates that the parties' view as to the controlling issue may differ from that of the district court. Also, as illustrated by this case, it may differ from that of other parties.

Although we recognize our scope of review may extend beyond the question posed, *see Capital Temporaries, Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658 (2d Cir.1974); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.25[1] (2d ed. 1987); 16 C. Wright, et al., *supra*, § 3929; Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. 607, 629 (1975), we decline to so extend it here. While guidance from this court might be helpful, we are persuaded that an early ruling on the points raised by the parties could only be hypothetical or speculative. *See Control Data Corp. v. International Business Machines Corp.*, 421 F.2d 323 (8th Cir. 1970) (declining interlocutory appeal review of admissibility of consent decrees entered in prior litigation).

## CONCLUSION

We, therefore, reverse the order denying Rael's motion to dismiss and remand for consideration of that motion on its merits. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.