2007-NMCA-120

168 P.3d 129

**Gilbert ARMIJO and Maria Casaus, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,**

v.

**WAL–MART STORES, INC., a Delaware corporation, Sam's Club, an operating segment of Wal–Mart Stores, Inc., Defendants–Appellants.**

**No. 26,122.**

Court of Appeals of New Mexico.

June 12, 2007.

Certiorari Denied, No. 30,586, Sept. 7, 2007.

Youtz & Valdez, P.C., Shane Youtz, Albuquerque, NM, Bader & Associates, LLC, Gerald L. Bader, Jr., Renée B. Taylor, Denver, CO, Franklin D. Azar & Associates,

P.C., Franklin D. Azar, Rodney Bridgers, Denver, CO, for Appellees.

Peifer, Hanson & Mullins, P.A., Charles R. Peifer, Cerianne L. Mullins, Albuquerque, NM, for Appellants.

## OPINION

PICKARD, Judge.

{1} Defendants, Wal–Mart Stores, Inc. and Sam's Club, bring this interlocutory appeal of an order certifying a class of former and current hourly employees of Defendants' stores throughout New Mexico who claimed they worked off the clock without compensation or missed rest breaks. On appeal, Defendants contend that the district court applied the wrong legal standard in determining whether class certification should be granted. Relatedly, Defendants appear to argue that the district court abused its discretion in granting class certification. We conclude that the district court did not apply an incorrect legal standard in granting class certification. We do, however, agree with Defendants' assertion that the district court did not correctly define the class and therefore modify the definitions accordingly. In all other respects, we affirm the district court.

## BACKGROUND

{2} This class action is one of many similar actions throughout the country concerning Defendants' corporate policies and practices, which are alleged to promote the maximization of profits through the minimization of labor costs, and which, according to Plaintiffs, "foster an environment where hourly employees work through agreed meal and rest breaks and work off-the-clock without compensation." *See, e.g., Basco v. Wal–Mart Stores, Inc.,* 216 F.Supp.2d 592 (E.D.La. 2002); *Ouellette v. Wal–Mart Stores, Inc.,* 888 So.2d 90 (Fla.Dist.Ct.App.2004); *Wal–Mart Stores, Inc. v. Bailey,* 808 N.E.2d 1198 (Ind.Ct.App.2004); *Iliadis v. Wal–Mart Stores, Inc.,* 387 N.J.Super. 405, 904 A.2d 736 (Ct.App.Div.2006), *appeal granted,* 188 N.J. 570, 911 A.2d 64 (2006); *Harrison v. Wal–Mart Stores, Inc.,* 170 N.C.App. 545, 613 S.E.2d 322 (2005); *Petty v. Wal–Mart Stores, Inc.,* 148 Ohio App.3d 348, 773 N.E.2d 576 (2002); *Wal–Mart Stores, Inc. v. Lopez,* 93 S.W.3d 548 (Tex.Ct.App.2002). Plaintiffs are a class of current and former hourly employees of Defendants' stores in New Mexico. Defendants employ more than 10,000 hourly employees, called associates, in approximately twenty-six different stores in New Mexico. Plaintiffs' claims include breach of contract, unjust enrichment, quantum meruit, and violation of the New Mexico Minimum Wage Act, NMSA 1978, §§ 50–4–19 to –30 (1955, as amended through 2005).

{3} Below, the district court identified four factual scenarios presented by Plaintiffs giving rise to the putative class action against Defendants. In the first, Plaintiffs allege that Defendants failed to compensate employees for missed rest breaks and that Defendants forced employees to miss rest breaks. In the second, Plaintiffs claim that Defendants failed to compensate employees for missed meal breaks and that Defendants forced employees to miss meal breaks. In the third, Plaintiffs allege that Defendants failed to let night employees leave Defendants' stores after finishing their shifts or otherwise clocking out and that Defendants encouraged night employees to continue to work after they had already clocked out. Lastly, Plaintiffs assert that Defendants required or encouraged employees to work off the clock without compensation.

{4} Plaintiffs assert that Defendants' alleged wrongful practices can be proved using common proof. Defendants have uniform written corporate policies that apply to all hourly employees. According to Defendants' policies, the number of breaks provided to each employee is dependant on the number of hours worked. For example, an employee who works less than three hours is not entitled to a break. An employee who works three to six hours is entitled to one fifteen-minute break. An employee who works more than six hours is entitled to two fifteen-minute breaks. Similarly, whether or not an employee is entitled to a meal break depends on the number of hours worked. Employees who work more than six consecutive hours are entitled to a thirty-minute meal period.

{5} Defendants' policies further provide that supervisors and management may not

ordinarily require employees to work during scheduled breaks and meal periods and that if an employee does work during a meal or rest break, he or she must be compensated and provided an additional meal or rest break. Defendants' policies also provide that no employee should perform work off the clock without compensation. Plaintiffs allege that each hourly employee is made aware of Defendants' policies during an orientation process.

{6} Defendants' employees are issued identification badges that are swiped into time clocks at Defendants' stores whenever employees begin or end their shifts. Employees also clock in and out for meal breaks, which are unpaid. Prior to February 2001, employees were required to clock in and out for rest breaks as well, but are no longer required to do so. Unlike meal breaks, rest breaks are paid.

{7} Defendants' payroll records include "Time Clock Archive Reports" and "Time Clock Exception Reports." The "Archive Reports" are generated by each of Defendants' stores and are based on employees' time-clock swipes. The report shows the hours worked each day by each hourly employee. The "Exception Reports" identify irregular patterns of time-clock swipes that deviate from Defendants' policies regarding shift length and rest and meal breaks. The patterns are characterized in a number of different ways, including short shift, long shift, too many breaks, too few breaks, etc. In situations when an employee's recorded time is inaccurate because the employee forgot to clock in or out or was otherwise unable to clock in or out of the time clock, the employee is supposed to submit a "Time Adjustment Request" form, which indicates what changes should be made to the employee's recorded time. These changes are entered into the payroll records by a personnel manager.

{8} Plaintiffs argue that it is possible to rely on Defendants' payroll reports and records to show that employees missed rest and meal breaks. According to Plaintiffs, statistical analysis will be employed to demonstrate the difference between earned and used breaks for all of the employees of De-fendants in New Mexico. Plaintiffs also rely on an internal audit report prepared by Defendants in July 2000, which is known as the "Shipley Audit." See Iliadis, 904 A.2d at 740. According to Plaintiffs, the audit was conducted to determine if Defendants' stores were complying with Defendants' policies re-garding scheduling and staffing of employ-ees. The audit revealed numerous failures by Defendants' stores to comply with Defen-dants' rest and meal break policies. See id. at 740–41. The audit warned that "Wal-Mart may face several adverse consequences as a result of staffing and scheduling not being prepared appropriately."

{9} In addition to missed rest and meal breaks, Plaintiffs assert that employees are required to work off the clock. According to Plaintiffs, employees working the night shift in Defendants' stores are often unable to leave the stores at the end of their shift because opening the doors triggers an alarm. Some of these employees continue working after finishing their shift until a manager comes to deactivate the alarm and let the employees leave. Plaintiffs also assert that there are instances during other shifts where employees do work after their shifts and during meal breaks without compensation.

{10} Although it is not apparent whether Plaintiffs argued this below, Plaintiffs assert that off-the-clock work can be demonstrated by comparing employee time records with other records kept by Defendants, including those that monitor use of cash registers by employees or that otherwise indicate that a particular employee is performing work. Additionally, Plaintiffs contend that off-the-clock work by night shift employees can be proved by comparing alarm system records with employee clock-out times. When the doors are locked at night at Defendants' stores, an alarm is activated. Unless it is an emergency, employees cannot leave the store at night until the doors are unlocked and the alarm is deactivated. Records are kept of when these store alarms are activated and deactivated. According to Plaintiffs, such records could be cross referenced with the time records of night employees at Defen-dants' stores.

{11} Plaintiffs assert that Defendants operate in a highly-centralized fashion. Plaintiffs claim that Defendants utilize a pyramid-like management structure. This structure, according to Plaintiffs, allows senior management to dictate corporate directives to store managers. It also allows senior management to monitor compliance with corporate directives on a daily basis. As such, senior management is able to keep close tabs on labor costs and can exert pressure on store managers to keep labor costs down. Additionally, Plaintiffs allege that Defendants' management bonus program creates disincentives for managers to enforce policies relating to rest and meal breaks and off-the-clock work by rewarding those managers who are able to keep labor costs down.

{12} Contrary to Plaintiffs' assertions, Defendants maintain that their operations within New Mexico are decentralized. According to Defendants, each store is separately managed by salaried store managers and assistant managers. These managers have authority for daily decisions regarding staffing, scheduling, and payroll. Additionally, payroll and time records are maintained by each individual store. Each store is also responsible for its own hiring and for the orientation of newly hired employees. Moreover, stores themselves are divided into departments, which are managed by different department managers. Defendants maintain that the decentralized nature of their operations will make it difficult to establish that the corporate-wide policy alleged to exist by Plaintiffs was uniformly implemented in stores throughout New Mexico.

{13} According to Defendants, employees are responsible for clocking in and out of work and must alert management of any discrepancies between hours worked and hours compensated. Defendants maintain that employees may fail to record their time properly for a number of reasons, including forgetting to clock in or out, broken time clocks, no time clocks, or habitual failure to clock in or out. It is the employee's responsibility on such occasions to fill out a "Time Adjustment Request" form with the necessary corrections to the employee's hours worked.

{14} Defendants also assert that employees are expected to manage their own time, including taking breaks when proper. According to Defendants, there are a number of different reasons why an employee might not take a rest or meal break. Defendants maintain that such reasons are not necessarily tied to corporate-wide policies or procedures, but are instead individual to each employee.

{15} After a three-day evidentiary hearing and one day of argument by counsel, the district court granted Plaintiffs' motion for class certification. The district court also concluded that Plaintiffs could proceed under Section 50–4–26(B)(2) of the Minimum Wage Act, which allows one or more employees to maintain an action for violations of the Act on behalf of other employees who are similarly situated. The district court detailed its ruling in a thirty-page order. In certifying the class, the district court rejected Plaintiffs' proffered class definition and instead certified three different subclasses, one under Rule 1–023 NMRA and two under the Minimum Wage Act. One subclass deals with missed rest breaks, while the other two deal with situations where employees worked off the clock without compensation. The district court did not certify a class involving meal break claims, it did not certify a class of all Defendants' employees, and it did not certify a Rule 1–023 class dealing with off-the-clock claims. Defendants subsequently filed a motion to permit interlocutory appeal.

{16} The district court granted Defendants' motion to permit interlocutory appeal of the class certification and, in doing so, identified two issues for review: (1) whether the court applied the correct legal standard in determining that this case should be certified as a class action under Rule 1–023 and (2) whether the court applied the correct legal standard in determining that this case should be certified as a collective action under Section 50–4–26(B). This Court subsequently granted Defendants' application for interlocutory appeal.

**STANDARD OF REVIEW**

{17} We "review de novo the initial decision of whether the correct legal standard has been applied" by the district court in determining whether to certify a class.

*Brooks v. Norwest Corp.*, 2004–NMCA–134, ¶ 7, 136 N.M. 599, 103 P.3d 39; *see Murken v. Solv–Ex Corp.*, 2006–NMCA–064, ¶ 22, 139 N.M. 625, 136 P.3d 1035. "Within the confines of Rule 1–023, the district court has broad discretion whether or not to certify a class." *Brooks,* 2004–NMCA–134, ¶ 7. To the extent that the district court has applied the correct legal standard to the facts, its decision to certify a class will be affirmed when supported by substantial evidence. *Id.; see Berry v. Fed. Kemper Life Assurance Co.,* 2004–NMCA–116, ¶ 25, 136 N.M. 454, 99 P.3d 1166.

## DISCUSSION

{18} Defendants raise three issues on appeal: (1) the district court applied a "novel and erroneous" legal standard in reviewing the evidence presented for class certification; (2) the district court misapplied New Mexico law in determining that Plaintiffs satisfied the elements of Rule 1–023; and (3) the district court erred as a matter of law in concluding that Plaintiffs are "similarly situated" to the employees they seek to represent in a collective action under Section 50–4–26(B)(2) of the Minimum Wage Act.

■■■ {19} As an initial matter, Plaintiffs argue that Defendants' brief in chief raises issues not originally identified as issues by the district court when it granted Defendants' motion to permit interlocutory appeal. Plaintiffs therefore assert that it is inappropriate for this Court to consider Defendants' contention that the district court abused its discretion in granting class certification. Although we agree that Defendants appear to present an additional issue not specifically identified by the district court when it permitted Defendants to apply for interlocutory appeal, we do not perceive the additional issue to be wholly unrelated to the issues identified by the district court. We observe that when a "court misapprehends the law, the court abuses its discretion." *Smart v. Carpenter,* 2005–NMCA–056, ¶ 6, 139 N.M. 524, 134 P.3d 811; *see LaBalbo v. Hymes,* 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct. App.1993) (stating that "[t]he trial court may abuse its discretion by applying the incorrect standard for a preliminary injunction or in-

correct substantive law, resting issuance of the injunction on clearly erroneous findings of fact; or applying the standards in a manner that results in an abuse of discretion"). Thus, to the extent that the district court relied on an erroneous legal standard in certifying the class, as Defendants contend, it abused its discretion in granting certification. Additionally, we note on interlocutory appeal, "our scope of review may extend beyond the question posed." *In re Adoption of Begay,* 107 N.M. 810, 814, 765 P.2d 1178, 1182 (Ct. App.1988). As such, we decline Plaintiffs' request that we refrain from considering the propriety of the district court's decision to grant class certification. Thus, after discussing the applicable standard of review, we will address each of Defendants' issues in turn.

**The district court's approach in determining whether class certification was appropriate**

■■■ {20} Initially, we note that because the federal rule is essentially identical to New Mexico's Rule 1–023, "[w]e may look to federal law for guidance in determining the appropriate legal standards to apply under these rules." *Romero v. Philip Morris, Inc.,* 2005–NMCA–035, ¶ 35, 137 N.M. 229, 109 P.3d 768 (citation omitted). *Compare* Rule 1–023, *with* Fed.R.Civ.P. 23. Below, the district court observed that the parties disagreed as to the proper legal standard to be applied in determining whether Plaintiffs' motion for class certification should be granted. After considering both parties' arguments, the court stated that it believed that both parties had incorrectly stated the proper standard and that the correct standard was as follows:

In the Tenth Circuit, the allegations set forth in the Plaintiffs' complaint are controlling at the class certification stage. Under the Tenth Circuit standard, this Court must accept Plaintiffs' allegations and all exhibits, affidavits, documents and evidence presented which support a granting of certification. The Court must rigorously analyze all the factual evidence supporting Plaintiffs' claims and only grant certification where all of the Rule 23 prerequisites have been completely satisfied.

In addition, where Defendants present additional *uncontested* evidence which is material to the certification of Plaintiffs' claim(s), then the Court is not prevented from considering such additional evidence as part of the requirement to rigorously analyze the facts and prerequisites for certification. Controverted or conflicting evidence presented by the Defendants, however, must not be considered against Plaintiffs in the certification analysis. Such an analysis would be an *improper* weighing of the evidence.

(Citations omitted.) Defendants contend that this standard is erroneous for two reasons. First, it allows the district court to accept as true all of Plaintiffs' evidence, regardless of whether Defendants have presented evidence that disputes, refutes, or otherwise demonstrates that Plaintiffs' evidence is not credible. Second, it allows the district court to ignore all of Defendants' evidence unless such evidence is undisputed. Contrary to Defendants' arguments, we do not believe that the district court's description of the applicable standard was sufficiently erroneous to be reversible, because while it was inartfully stated, the district court actually applied the correct standard, as will be seen below.

{21} In determining whether class certification is appropriate, a district court must engage in a "rigorous analysis" to decide whether the requirements of Rule 1-023 are met. *Romero,* 2005–NMCA–035, ¶ 38; *see Brooks,* 2004–NMCA–134, ¶ 9. While the party seeking class certification has the burden of demonstrating that each requirement of Rule 1-023 is met, the moving party is "not required to prove [its] case at the certification stage." *Brooks,* 2004–NMCA–134, ¶¶ 9–10; *see Romero,* 2005–NMCA–035, ¶ 38. As such, a district court should avoid examining the merits of the moving party's case at the time class certification is sought. *Brooks,* 2004–NMCA–134, ¶ 9.

{22} Although it is not appropriate to examine the merits of Plaintiffs' claims at the certification stage, the district court should not simply presume that the requirements of Rule 1–023 are met. *Romero,* 2005–NMCA–035, ¶ 39. At this stage, "it is essential for the court to understand the substantive law, proof elements of, and defenses to the asserted cause of action to properly assess whether the certification criteria are met." *Brooks,* 2004–NMCA–134, ¶ 31; *see Romero,* 2005–NMCA–035, ¶ 38 ("The district court's rigorous analysis often involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (internal quotation marks and citation omitted)). If it is possible to make such a determination simply on Plaintiffs' pleadings, then the court may do so. *Brooks,* 2004–NMCA–134, ¶ 9. If necessary, however, the court "may probe behind the pleadings and forecast what kind of evidence may be required or allowed at trial." *Id.; see Romero,* 2005–NMCA–035, ¶ 38.

{23} As recognized by Plaintiffs, the rigorous analysis required of the district court involves a close and careful examination of whether the requirements of Rule 1–023 are met and does not involve an examination of the actual merits of Plaintiffs' claims. *See Brooks,* 2004–NMCA–134, ¶ 9. We disagree with Defendants' assertion that *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280 (10th Cir.1999), contradicts the district court's own formulation of the standard. According to the Tenth Circuit, at the class certification stage, the district court "should accept the allegations contained in the complaint as true." *Id.* at 1290 n. 7. The court should not, however, blindly accept any "conclusory allegations which parrot Rule 23 requirements." *Id.* (quoting 3 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 7.26 (3d ed.1992)). In the present case, the district court recognized that it had to engage in a rigorous analysis to determine whether Plaintiffs satisfied the requirements of Rule 1–023. The court was careful, however, to explain that the rigorous analysis would not involve an examination of the merits of the claims. As such, we believe that what the district court meant in its challenged language was that the court accepted Plaintiffs' factual allegations about the merits as true and declined to examine evidence proffered by Defendants that disputed such allegations. Such an approach is consistent with class action law within New Mexico and the Tenth

Circuit. *See, e.g., J.B. ex rel. Hart,* 186 F.3d at 1290; *Brooks,* 2004–NMCA–134, ¶ 9.

{24} Although we do not believe that the district court necessarily misstated the applicable standard for determining whether class certification is appropriate, we are concerned enough about the articulation of the standard that we review the court's determination that class certification was appropriate to decide whether the court actually applied the correct legal standard. As we shall discuss later in the opinion, the district court's written opinion granting class certification indicates that the court did carefully consider the evidence proffered by Defendants in support of their assertion that class certification was inappropriate. Thus, we cannot say that any possible misarticulation of the proper standard in one paragraph of the district court's thirty-page opinion warrants a reversal of the certification. Of course, if the district court believes that we have misunderstood and that Defendants are correct in their analysis of the district court's opinion, the district court is free to, and should, decertify the class.

**Class action certification under Rule 1–023**

■ {25} Class certification is appropriate under Rule 1–023 when "all four prerequisites of Rule 1–023(A) and at least one of the requirements of Rule 1–023(B) are met." *Brooks,* 2004–NMCA–134, ¶ 10. "Failure to establish any one requirement is a sufficient basis for the district court to deny certification." *Id.*

{26} Rule 1–023(A) lists four prerequisites for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* ¶ 11. The district court is also required to find that the requirements of Rule 1–023(B)(1), (2), or (3) are met. *See Salcido v.*

*Farmers Ins. Exch.,* 2004–NMCA–006, ¶ 21, 134 N.M. 797, 82 P.3d 968. In the present case, the district court concluded that each of the four prerequisites listed in Rule 1–023(A) was met. The court also concluded that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," as required by Rule 1–023(B)(3).

{27} On appeal, Defendants argue that the district court erred as a matter of law in concluding that the typicality prerequisite in Rule 1–023(A) was established by Plaintiffs. Defendants further assert that individual questions of fact or law predominate and that a class action is not a superior manner in which to try the issues raised in the present case. Thus, according to Defendants, the district court also erred in concluding that Rule 1–023(B)(3) was met. Finally, Defendants argue that the district court's subclass definitions are legally erroneous. We conclude that the district court did not apply an incorrect legal standard or otherwise abuse its discretion in deciding to grant Plaintiffs' motion for class certification. We do, however, modify the subclass definitions created by the court.

**a. Typicality**

■ {28} "The typicality requirement of Rule 1–023(A)(3) is used to gauge in general how well the proposed class representative's case matches the class factual allegations and legal theories." *Berry,* 2004–NMCA–116, ¶ 43. As we previously recognized in *Berry,* the fit between the class representative's case and the factual allegations and legal theories of the class need not be perfect. *Id.* "If the alleged unlawful conduct affects both the named plaintiff and the class members, varying fact patterns in individual claims will not usually defeat typicality unless the variation is so great that there is a conflict created between the named parties and the class." *Id.* In determining whether the typicality prerequisite is met we ask " 'whether other members have the same or similar injury, whether the action is based on

conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'" 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.13, at 327 (4th ed.2002) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)).

{29} In the present case, the district court concluded that the typicality prerequisite was met because the "interests and legal theories being pursued by the named Plaintiffs appear to be clearly aligned with those of the representative class members." One of the named Plaintiffs, Gilbert Armijo, was an hourly employee who missed rest breaks during his tenure as an employee in the tire and lube division of Defendants' Espanola Wal–Mart. The second named Plaintiff, Maria Casaus, was an hourly employee who worked nights as a forklift driver at Defendants' Farmington Sam's Club store. She claims that she missed rest breaks and that she also worked off the clock on numerous occasions.

{30} In determining whether the typicality requirement was met, the district court acknowledged Defendants' assertions that the named Plaintiffs' work environments were unique and that some of their claims may have factual differences. The court noted, however, that such differences did not change the fact that the basic factual elements of the named Plaintiffs' claims were similar to that of the rest of the class. The court further stated that any of the alleged individual variations between "subclass member[s] would not prevent the named Plaintiffs from advancing the common claims and interests of the subclass members." We agree with the district court that these factual variations do not render the named Plaintiffs' claims atypical of the class.

{31} Although the named Plaintiffs' positions and job duties differ from one another and from other members of the class, we fail to see how these differences make the named Plaintiffs' claims with respect to missing rest breaks and working off the clock "significantly different from the claims and defenses of any class members." *Salcido*, 2004–NMCA–006, ¶ 26; *see Aguinaga v. John Morrell & Co.*, 602 F.Supp. 1270, 1279 (D.Kan.1985)

("The named plaintiffs need not be in a position identical to that of every member of the putative class."). Moreover, although Defendants present evidence disputing the existence of an oral or written contract, we believe that such evidence goes to the merits of Plaintiffs' case, not whether the typicality requirement is satisfied. *See Salcido*, 2004–NMCA–006, ¶ 28. Lastly, we observe that the district court's order indicates that it considered the Defendants' arguments and evidence regarding typicality and nonetheless concluded that the prerequisite was met. On these facts, we cannot say that the district court abused its discretion in determining that the named Plaintiffs' claims were typical of the class.

**b. Predominance**

{32} If the district court determines that the four prerequisites to a class action described in Rule 1–023(A) are met, it must then determine whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Rule 1–023(B)(3). This is known as the predominance requirement. *Romero*, 2005–NMCA–035, ¶ 9. Although not defined in Rule 1–023(B)(3), the predominance requirement "brings into primary focus the plaintiffs' proposed methods of proof at trial of the elements of" their claims. *Id.; Berry*, 2004–NMCA–116, ¶¶ 46, 50. "The predominance test expressly directs the court to make a comparison between the common and individual questions involved in order to reach a determination of such predominance of common questions in a class action context." 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4.24, at 154 (4th ed.2002). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." 2 Conte & Newberg, *supra* § 4.25, at 172. Additionally, "the fact that those individual issues might take some time to resolve does not defeat predominance because courts have a number of methods for dealing with individual issues in class litigation." *Miller v. Farmer Bros. Co.*, 115 Wash.App. 815, 64 P.3d 49, 56 (2003); *see*

*Berry,* 2004–NMCA–116, ¶ 48 ("[P]redominance is not determined by a simple quantitative measure of the time that may be spent on common rather than individual issues, though that calculation can be a factor properly taken into account.").

{33} In the present case, although the district court recognized that some individual issues raised by Defendants may later prove problematic, it nonetheless concluded that Plaintiffs had adequately satisfied the predominance requirement of Rule 1–023(B)(3). We observe, however, that "[a]lthough the district court identified some of the crucial liability issues that would require individual determinations, it did not identify Plaintiffs' required proof or how the individual issues related to that proof." *Brooks,* 2004–NMCA–134, ¶ 36. As we previously observed in *Brooks,* such omissions are not necessarily fatal to the court's decision to certify the class, but "we nevertheless remind the district courts that given the highly deferential standard under which we review class certification, and the inherent complexities of the issue, the court should be as specific as possible in its findings of fact and conclusions of law." *Id.* Thus, when deciding whether class certification is appropriate, district courts should identify the essential elements of each of Plaintiffs' claims and which facts support the court's decision that certification should be granted. *Id.; see Collins v. Anthem Health Plans, Inc.,* 275 Conn. 309, 880 A.2d 106, 118–19 (2005) (identifying a three-step analysis to determine whether the predominance requirement is met: (1) review elements of the plaintiffs' claims; (2) determine whether elements can be proved with common proof or whether individualized proof is required; and (3) "weigh the common issues that are subject to generalized proof against the issues requiring individualized proof in order to determine which predominate"). Although the district court did not do this in the present case, we believe that the record is sufficient and the district court's order is detailed enough such that we can properly ascertain whether the district court abused its discretion in certifying the class. We hold that it did not.

{34} Plaintiffs' claims under the subclass certified under Rule 1–023 include breach of contract and unjust enrichment. In order to prove breach of contract, Plaintiffs will be required to prove that (1) Defendants were contractually obligated to provide rest breaks for their employees; (2) a missed rest break constitutes breach of that contract; and (3) the breach resulted in damages to the employees. *See Brooks,* 2004–NMCA–134, ¶¶ 37–38. Although Defendants dispute whether they were contractually obligated to provide breaks, we agree with Plaintiffs' assertions that whether a contract actually exists is a question that is common to the class. Defendants have a written policy regarding rest breaks that is applicable to all of its hourly employees. Additionally, Plaintiffs assert that the substance of Defendants' policies is communicated to employees during orientation. It therefore appears that the question of whether Defendants are contractually obligated to provide rest breaks to its hourly employees-whether through oral or written contract-is a question common to the class and certainly one that will predominate the litigation. *See Braun v. Wal–Mart Stores, Inc.,* No. 19–CO–01–9790, 2003 WL 22990114, at *7–8 (D.Minn. Nov. 3, 2003).

{35} We disagree with Defendants' assertions that the determination of whether a contract exists will necessarily involve individualized inquiries of each class member. We note that it is not readily apparent from the record whether Plaintiffs rely on the employee handbook as evidence of a contract or whether representations made during orientation sessions constitute the basis for the contract claim or both. As previously discussed, Plaintiffs assert (and Defendants apparently do not dispute) that the written handbook is applicable to all hourly employees. Whether or not the handbook can actually be considered a contract will be a question common to the class. *See id.* ("[The] [p]laintiffs allege that all four elements of such a contractual obligation are present: (1) the terms are written and definite in form; (2) the terms were communicated to Wal–Mart's employees; (3) the offer was accepted by the employees; and (4) consideration was given by the employees by continuing to work for the company.").

{36} We recognize that alleged oral representations may present a different problem at trial. We observe, however, that Plaintiffs allege that the handbook policies are conveyed to newly hired employees at orientation sessions. To the extent that these orientation sessions are uniform in the sense that the same general information is conveyed to all employees regardless of the store, it may be possible for Plaintiffs to demonstrate the existence of an oral contract by common proof. *See Rainbow Group, Ltd. v. Johnson,* 990 S.W.2d 351, 355, 360 (Tex.App.1999) (concluding that predominance was met based upon the plaintiffs' allegations that all employees were subject to the same orientation process and handbook), *modified on other grounds by Nissan Motor Co. v. Fry,* 27 S.W.3d 573, 590 (Tex.App.2000). *But see Basco,* 216 F.Supp.2d at 602–03 (holding that individual issues predominated where the plaintiffs would be required to prove the terms of and breach of oral contracts); *Lopez,* 93 S.W.3d at 557 (holding that "[b]ecause each orientation session was conducted by different Wal–Mart personnel at different stores, proof of an oral contract with each class member will require a determination of the terms of the contract through offer and acceptance," individualized questions will predominate). We caution, however, that to the extent that Defendants are able to demonstrate that orientation sessions are significantly different from store to store, individualized issues may likely predominate with respect to Plaintiffs' breach of contract claim. At this point, however, although Defendants claim that orientation sessions are run by different employees at each store, Defendants have not presented evidence to suggest that the actual content of the orientation sessions—presumably a presentation of the applicable policies and procedures for hourly employees—is so materially different from store to store that predominance of common questions cannot be established.

{37} Moving on to the second element of Plaintiffs' breach of contract claim, we believe that the question of whether a missed break constitutes a breach of contract is also an issue common to the class. *See Vignaroli v. Blue Cross of Iowa,* 360 N.W.2d 741, 744–45 (Iowa 1985) (holding that the question of whether the written terms of an employment manual were violated was a question common to the class). Although Defendants assert that employees have individualized reasons for missing breaks that will predominate the litigation, we believe that the key issues with respect to this element are whether a missed break constitutes a breach of contract and whether an employee can waive his or her contractual right to a break without compensation. Such issues are common to the class.

{38} We likewise conclude that common issues predominate Plaintiffs' unjust enrichment claim. *See Braun,* 2003 WL 22990114, at *10. To prevail on their unjust enrichment claim, Plaintiffs must demonstrate that (1) Defendants have benefitted from the missed breaks of their employees "(2) in a manner such that allowance of [Defendants] to retain the benefit would be unjust." *Ontiveros Insulation Co., Inc. v. Sanchez,* 2000–NMCA–051, ¶ 11, 129 N.M. 200, 3 P.3d 695. The question as to whether a missed break confers a benefit on Defendants appears to be a common question. Likewise, whether Defendants' retention of that benefit without compensation to Plaintiffs is unjust also appears to be a common question.

{39} *Additionally,* although Defendants assert that they may have affirmative defenses against individual class members, we do not believe that this is reason enough to require the district court to deny class certification. *See Berry,* 2004–NMCA–116, ¶¶ 65–66. Moreover, as recognized by the district court, Defendants have not demonstrated that these individualized factual issues are sufficiently widespread to deny class certification at this point. *See id.* ¶ 66. We further note that the predominance of common issues relating to Plaintiffs' breach of contract and unjust enrichment claims will not be defeated solely because there may be individual questions as to damages, so long as common issues of liability predominate. *See* 2 Conte & Newberg, *supra* § 4.25, at 159–60; *accord Pitts v. Am. Sec. Ins. Co.,* 144 N.C.App. 1, 550 S.E.2d 179, 188 (2001) ("[W]hen a plaintiff establishes an issue of law common to all class members, the possibility of individualized damages is a collateral matter.").

{40} We further observe that the district court's order granting class certification indicates that the district court was aware of the individual issues raised by Defendants. Indeed, the court identified eight different factual issues raised by Defendants in support of their argument that individual questions predominated over any questions common to members of the class:

1) the factual hiring procedure and basis for the formation of any employment contract; 2) the employee's reasons for missed breaks or staying locked inside a specific store during night shifts; 3) the varied amount of any damages suffered by each employee claiming harm; 4) the variety of defenses available to Defendants based upon the facts of each event establishing a compensable claim; 5) the knowledge or consent of different managers to any improper computerized payroll activity and other alleged activities occurring in each store; 6) the various types of pressure or persuasion used by different managers to cause employee(s) to miss a rest break or work "off the clock"; 7) the reasons an employee failed to mitigate any damages by addressing the claim(s) directly with Defendants under the existing policies or procedures; and 8) the inability to cross-examine witnesses where actions or decisions rely upon individual factual issues.

The court expressed concern about some of these issues, particularly damage calculations, but nonetheless determined that common issues predominated. The court noted that the overarching issue in the present case was whether Defendants implemented policies and procedures that resulted in Plaintiffs being forced or coerced to miss breaks and/or work off the clock. With respect to the damages issue, the court recognized that it has various judicial methods to deal with damages without denying class certification on liability issues. The district court concluded that to the extent that the issues raised by Defendants actually present individual questions and these questions ultimately predominate over common questions, the court may decide to decertify the class.

{41} We remain unconvinced that the district court applied an incorrect legal standard or otherwise abused its discretion in concluding that predominance was met under Rule 1–023(B)(3). We observe that the district court did consider Defendants' evidence regarding individual issues, but was simply not persuaded that such issues would predominate. Moreover, the court recognized that should individual issues with respect to damages pose a problem, it has methods to deal with such a problem. Such methods include:

(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir.2001) (footnote omitted), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y.2006). We further observe that the court took it upon itself to create subclasses and rejected Plaintiffs' proffered class definition on the grounds that it was too broad and presented individual issues that could not be dealt with on a class-wide basis.

{42} Finally, we recognize that while courts should engage in rigorous analysis in determining whether predominance is satisfied, "there is more than a kernel of truth in the view that in some complex cases '[d]ecisions as to whether class action status should be allowed seem to rest, more than many other judicial determinations, on judicial philosophy, rather than on precedent or statutory language.' " *Romero*, 2005–NMCA–035, ¶ 50 (quoting *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 288 (N.D.2003)). To the extent that the district court's determination that predominance was met presents a close question, our cases, while noting that this principle has been tempered, affirm the principle that it is proper to err in favor of approving the class. *Id.* (citing *In re Workers' Comp.*, 130 F.R.D. 99, 103 (D.Minn.1990)); *Berry*, 2004–NMCA–116, ¶ 34. We therefore hold that the district court did not abuse its dis-

cretion in concluding that the predominance requirement of Rule 1–023(B)(3) was met.

### c. Superiority

■ {43} The second requirement of Rule 1–023(B)(3) is that the proposed "class action is superior to other available methods for the fair and efficient adjudication of the controversy." This is known as the superiority requirement. *See Romero,* 2005–NMCA–035, ¶ 9. As part of this requirement, Rule 1–023(B)(3) provides that the district court should consider several factors in determining whether a class action is the superior method of adjudication, including the following:

> (1) "the interest of members of the class in individually controlling the prosecution or defense of separate actions," (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and (4) "the difficulties likely to be encountered in the management of a class action."

*Murken,* 2006–NMCA–064, ¶ 23, 139 N.M. 625, 136 P.3d 1035 (quoting Rule 1–023(B)(3)).

{44} In the present case, while not explicitly addressing each of the four factors described above, the district court concluded that the superiority requirement was met because judicial economy and resources would be preserved by allowing the suit to proceed as a class action. Defendants argue that the district court erred in concluding that superiority was established by Plaintiffs because individual issues will predominate and because individual actions brought by the Department of Labor or by individual employees are superior. We hold that the district court did not err as a matter of law or otherwise abuse its discretion in concluding that the superiority requirement was met.

■ {45} "Although the dismissal of a class action because of management difficulties is generally disfavored, dismissal is warranted where individual issues predominate to make the class action unmanageable, even if no alternative remedy exists." *Brooks,* 2004–NMCA–134, ¶ 34 (citation omitted). Having already concluded that the district court did not abuse its discretion in concluding that common questions predominate, we reject Defendants' contention that the predominance of individual issues precludes a finding of superiority. *See id.* ¶ 33 ("If predominance is met, courts generally find that the class action is superior and will grant certification, even if the case presents difficulties in management, unless the problems are insurmountable."). Moreover, we note that to the extent that individual issues may present a problem with respect to manageability, we defer to the district court's decision to certify the class. *See id.* ¶ 34 ("The [district] court's discretion is paramount when it determines whether a class action is manageable.").

{46} Additionally, we disagree with Defendants' contention that individual actions or actions by the Department of Labor are superior to a class action. Although the Minimum Wage Act does allow for suits by individual employees or the Department of Labor for violations of its provisions, *see* § 50–4–26(A)(2), (B)(1), we observe that Plaintiffs' claims under the Rule 1–023 certified subclass do not involve violations of the Minimum Wage Act, but are instead claims alleging breach of contract and unjust enrichment. Additionally, given the potential size of the class, we fail to see how individual actions would be superior to a class action. Finally, we note that Defendant does not argue that any of the other factors listed in Rule 1–023(B)(3) should serve as a bar to certifying the class. *See Murken,* 2006–NMCA–064, ¶ 28 (indicating several factors that courts consider in determining superiority). We therefore conclude that the district court did not abuse its discretion in concluding that the superiority requirement of Rule 1–023(B)(3) was met.

### Collective actions under Section 50–4–26(B)(2) of the Minimum Wage Act

{47} The Minimum Wage Act "establishes a floor below which employers cannot pay employees wages and also requires the payment of time and a half for work in excess of

a forty-hour workweek." *N.M. Dep't of Labor v. Echostar Commc'ns Corp.*, 2006–NMCA–047, ¶ 1, 139 N.M. 493, 134 P.3d 780 (citing §§ 50–4–22(A), (C)). Among other enforcement methods, the Act permits a collective action by employees on behalf of "themselves and other employees similarly situated." Section 50–4–26(B)(2). As recognized by Defendants, the Act does not define the term "similarly situated," and there is no appellate decision in New Mexico regarding the standard. The Federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219 (2000), however, contains a similar provision allowing for similarly situated employees to maintain a collective action for violations of FLSA's provisions. *See* § 216(b). We will therefore look to federal cases construing § 216(b) of the FLSA for guidance. *See Garcia v. Am. Furniture Co.*, 101 N.M. 785, 788–89, 689 P.2d 934, 937–38 (Ct.App.1984).

{48} While there is little federal circuit law defining "similarly situated" for the purposes of a collective action under FLSA, "[f]ederal district courts have adopted or discussed at least three approaches" to the issue. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.2001). Under the first approach, known as the "two-tiered" or "ad hoc" approach, "a court typically makes an initial notice stage determination of whether plaintiffs are similarly situated." *Id.* (internal quotation marks and citation omitted). At this initial stage, all that is required are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D.Colo.1997) (internal quotation marks and citation omitted); *see Thiessen*, 267 F.3d at 1102. At the second stage, which typically follows discovery and/or a motion to decertify the class, the court must revisit its initial determination, only now under a stricter standard of "similarly situated." *Thiessen*, 267 F.3d at 1102–03. Under this stricter analysis, the court should consider several factors in determining whether the putative class members are similarly situated, including the following: (1) whether the class members have disparate factual and employment settings, (2) whether the available defenses to the claims are individual to each class

member, and (3) whether there are any fairness or procedural considerations relevant to the action. *Id.* at 1103. After considering the above factors, the court must then decide whether the suit may continue as a collective action.

{49} The second approach evaluates whether the putative collective action meets all of the requirements of a Rule 23 class action in order to determine whether the "similarly situated" requirement is met. *Thiessen*, 267 F.3d at 1103; *see, e.g., Shushan v. Univ. of Colo.*, 132 F.R.D. 263, 265 (D.Colo.1990); *St. Leger v. A.C. Nielsen Co.*, 123 F.R.D. 567, 568–69 (N.D.Ill.1988). Lastly, under the third approach, courts apply the "pre[-]1966 version of Rule 23, which allowed for 'spurious' class actions." *Thiessen*, 267 F.3d at 1103; *see Bayles v. Am. Med. Response of Colo., Inc.*, 950 F.Supp. 1053, 1061 (D.Colo.1996). The two-tiered/ad hoc approach is the approach followed by a majority of federal courts. *Wynn v. Nat'l Broad. Co., Inc.*, 234 F.Supp.2d 1067, 1082 (C.D.Cal. 2002).

{50} While the Tenth Circuit has recognized that "there is little difference in the various approaches"—as all three involve consideration of similar factors and allow district courts discretion in deciding whether to allow a collective action to proceed-it nonetheless concluded that the ad hoc approach was the proper standard. *Thiessen*, 267 F.3d at 1105. The court noted that Congress could have chosen to apply Rule 23 standards to collective actions, but instead settled on the "similarly situated" standard. *Thiessen*, 267 F.3d at 1105. For that reason, the court concluded that "[t]o now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 (either the current version or the pre[-] 1966 version) would effectively ignore Congress' directive." *Thiessen*, 267 F.3d at 1105. We likewise acknowledge that had the legislature wanted to apply Rule 1–023 standards to collective actions under the Minimum Wage Act, it could have done so. *Cf. Cochrell v. Mitchell*, 2003–NMCA–094, ¶ 29, 134 N.M. 180, 75 P.3d 396 ("If the legislature had wanted to mandate an element of the sale price to be a certain level, whether the full appraised val-

ue or the taxable value or some percentage of either, it could have easily so provided."). Thus, for the same reasons espoused by the Tenth Circuit in *Thiessen*, we conclude that the two-tiered/ad hoc approach is the proper standard to apply to collective actions under Section 50–4–26(B)(2) of the Minimum Wage Act.

{51} In the present case, both parties apparently agree that the two-tiered approach is the correct approach in determining whether Plaintiffs are similarly situated under Section 50–4–26(B)(2). The parties disagree, however, on whether the evidence should be evaluated under the less stringent notice stage analysis or whether the case has progressed such that the stricter second stage analysis is appropriate. It is not readily apparent which approach the district court adopted in determining whether Plaintiffs are similarly situated for the purposes of a collective action under the Minimum Wage Act.

{52} Defendants argue that certification discovery is complete and the lawsuit has been going on for nearly six years, thus making the second stage analysis applicable. Under such an analysis, the court is required to take a hard look at whether Plaintiffs are actually similarly situated, utilizing the three factors discussed above. *See Thiessen*, 267 F.3d at 1102–03. We note, however, that the district court has only had one opportunity so far to determine whether Plaintiffs were similarly situated. Additionally, the court itself observed that it was still early in the lawsuit and stated that it planned to return to the issue of whether Plaintiffs were actually similarly situated. This suggests that the less stringent notice stage analysis is more appropriate. Moreover, although class certification discovery has been completed, it does not appear that merits discovery has begun yet. *See Pivonka v. Bd. of County Comm'rs*, No. 04–2598–JWL, 2005 WL 1799208, at *2 (D.Kan. July 27, 2005) (concluding that first-tier analysis is appropriate where class certification discovery was complete, but merit-based discovery had not begun). Additionally, no notice has been sent out to putative class members. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D.Kan.

2004) (stating that at the first tier, "the district court determines whether a collective action should be certified *for purposes of sending notice of the action to potential class members*" (emphasis added)). We therefore conclude that the district court should have evaluated Plaintiffs' claims under the less stringent notice stage standard. Thus, to the extent that the district court accepted Plaintiffs' argument that a less stringent standard should be applied to the question of whether Plaintiffs are similarly situated, we hold that the district court did not apply an incorrect legal standard in determining whether Plaintiffs were similarly situated under Section 50–4–26(B)(2).

{53} Under the notice stage, Plaintiffs need only present substantial allegations that the "putative class members were together the victims of a single decision, policy, or plan." *Vaszlavik*, 175 F.R.D. at 678 (internal quotation marks and citation omitted). "The standard for certification at this notice stage ... is a lenient one that typically results in class certification." *Brown*, 222 F.R.D. at 679. We do not believe that the district court abused its discretion in concluding that this standard was met.

{54} Plaintiffs allege that Defendants' corporate policies and procedures create an environment in which employees are forced or coerced to work through breaks and off the clock. In support of this assertion, Plaintiffs presented evidence of a corporate atmosphere in which managers are encouraged to keep labor costs down. As previously discussed, Plaintiffs have presented various methodologies in which they hope to demonstrate that missed breaks and off-the-clock work are widespread problems throughout Defendants' stores. Deposition testimony from the class representatives support these general allegations. *See Brown*, 222 F.R.D. at 681. Affidavits from putative class members provide additional support for Plaintiffs' allegations. We believe that the evidence presented by Plaintiffs supports their assertion that "putative class members were together the victims of a single decision, policy, or plan," which was Defendants' alleged pattern and practice of forcing or coercing off-the-clock work and missed rest breaks in an

attempt to minimize labor costs. *Vaszlavik*, 175 F.R.D. at 678 (internal quotation marks and citation omitted); *see Brown*, 222 F.R.D. at 681.

{55} Below, the district court acknowledged that Defendants had presented evidence to suggest that Plaintiffs were not similarly situated as Defendants had individual defenses to the claims. The court noted, however, that it was satisfied that Plaintiffs had presented enough evidence at this stage to allow the suit to proceed. It further stated that it planned to revisit the question of whether Plaintiffs were similarly situated at a later date. *See Brown*, 222 F.R.D. at 682 ("[T]he court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."). Based on these facts, we cannot say that the district court abused its discretion in concluding, albeit tentatively, that Plaintiffs were similarly situated under Section 50-4-26(B)(2).

**Subclass Definitions**

{56} As a final matter, we note that Defendants have raised concerns about the district court's definitions of the three subclasses. Below, the district court defined the three applicable subclasses as follows:

1. A subclass of all New Mexico store employees of the Defendants who are entitled to earned rest breaks during their shifts from September 19, 1994, to the present, and who failed to "clock out" of the Defendants' computerized payroll system for any earned rest break(s) because of any action, policy or practice of the Defendants. . . .

2. A subclass of all New Mexico store employees of the Defendants who worked the night shift from September 19, 1994, to the present and who continued to work and/or were not allowed to immediately leave Defendants' premises after having "clocked out" of the Defendants' computerized payroll system because of any action, policy or practice of the Defendants. . . .

3. A subclass of all New Mexico store employees of the Defendants who worked the day or evening shifts from September 19, 1994, to the present and who continued to work off the clock after having "clocked out" of the Defendants' computerized payroll system because of any action, policy or practice of the Defendants.

Defendants contend that these subclasses definitions are legally erroneous because the definitions (1) depend on the merits of the claims asserted, (2) rely on subjective criteria, (3) are overly broad, and (4) will fail to bind class members in the event of an adverse judgment. We agree that the subclass definitions are dependent on the merits of the claims asserted and therefore modify the definitions accordingly.

{57} "Whether a class definition is legally sufficient depends on the facts of each case and must be determined on a case-by-case basis." *Brooks*, 2004–NMCA–134, ¶ 23. Generally, class definitions should be related to the defendant's activities and "should include a common transactional fact or status predicated on the cause of action, the appropriate time span, and geographical boundaries, if applicable, or other pertinent facts or characteristics that would make the class readily identifiable and capable of accurate verification." *Id.* A class definition should not contain "subjective criteria or circular definitions that depend on the outcome of the litigation." *Id.* Additionally, "[i]mprecise, vague, or broad definitions that include persons with little connection to the claims will fail to meet the definiteness requirement." *Id.*

{58} We agree with Defendants that the phrase "because of any action, policy or practice of the Defendants" presents a merit-based question to determine subclass membership. In order to determine whether a putative class member satisfies this condition of class membership, the district court would have to decide whether Defendants' policies or practices coerce or force individuals to either work off the clock or to miss breaks, a determination that turns on the central issue of liability in the present case. *See Petty*, 773 N.E.2d at 579–80 (rejecting class definition that defined class as "all employees who

were *required or permitted* to work off the clock or miss breaks and meals" on grounds that it would require a merits-based analysis (emphasis added)).

{59} *In re Natural Gas Commodities Litigation,* 231 F.R.D. 171 (S.D.N.Y.2005), presents a similar class definition issue. In that case-a class action alleging that various energy companies had manipulated the natural gas futures market-the relevant class was defined to include investors who purchased or sold natural gas futures and who suffered losses due to the defendants' manipulation of the market. *Id.* at 178–79. The court concluded the second part of the class definition hinged upon whether the energy companies had actually manipulated the market, which would require the court to inquire into the merits of the plaintiffs' complaint to determine class membership. *Id.* at 179–80. As such, the class definition was improper. *Id.; see Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D.Pa.1995) (rejecting class definition that would require "a mini-hearing on the merits of each case"). The court concluded that the best way to deal with the erroneously defined class was simply to strike the second part of the definition. *In re Natural Gas,* 231 F.R.D. at 180. Likewise, we believe that the phrase "because of any action, policy, or practice of Defendants" should be stricken from each of the three subclasses.

{60} We also agree with Defendants' contention that the district court erred in including the phrase "failed to clock out" in the subclass dealing with missed rest breaks. As Defendants point out, the practice of requiring employees to clock out for rest breaks was ended in February 2001. As such, we believe that the court should modify the subclass definition by deleting the phrase "failed to clock out" and simply define the class as including those employees who missed rest breaks during the applicable time period.

{61} Having modified the pertinent subclasses accordingly, we decline Defendants' request to reverse the district court's grant of class certification. Because Plaintiffs have not appealed the various aspects of the district court's order granting class certification

that they do not agree with, we decline to address such arguments on appeal. *See Watkins v. Local Sch. Bd. of Los Alamos Schs.,* 88 N.M. 276, 278, 540 P.2d 206, 208 (1975) ("[A] party ... who does not appeal is presumed to be satisfied with the judgment rendered by the court below.").

## CONCLUSION

{62} We affirm the district court's grant of Plaintiffs' motion for class certification as modified.

{63} IT IS SO ORDERED.

WE CONCUR: JAMES J. WECHSLER, and CELIA FOY CASTILLO, Judge.