# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 7, 2018

**NO. A-1-CA-35371**

**CLARK EVANS SLOANE, KIM E. DAVIS, QUEENA KIEN, MINDI M. SHULTZ, and ANTHNETTE SPENCER, on behalf of themselves and all others similarly situated,**

Plaintiffs-Appellants,

v.

**REHOBOTH MCKINLEY CHRISTIAN HEALTH CARE SERVICES, INC. d/b/a REHOBOTH MCKINLEY CHRISTIAN HOSPITAL, a New Mexico Non-Profit Corporation,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Louis E. DePauli, Jr., District Judge**

Youtz & Valdez, P.C.
Shane Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellants

Moody & Warner, P.C.
Repps D. Stanford
Christopher M. Moody
Albuquerque, NM

for Appellee

**OPINION**

**GALLEGOS, Judge.**

{1}     This is a wage-and-hour putative collective and class action alleging that Defendant, Rehoboth McKinley Christian Health Care Services, Inc. (Rehoboth), failed to pay Plaintiffs and other non-exempt employees for time they spent working during meal breaks. This Court granted Plaintiffs' application for interlocutory appeal to consider two questions: (1) whether the district court erred in denying conditional certification for a collective action under the Minimum Wage Act (MWA), NMSA 1978, §§ 50-4-19 to -30 (1955, as amended through 2013); and (2) whether the district court erred in denying class certification for Plaintiffs' unjust enrichment claim. For the reasons that follow, we reverse the district court's denial of conditional certification for the MWA claim, and we affirm the district court's denial of class certification for the unjust enrichment claim.

**BACKGROUND**

{2}     Rehoboth is a non-profit, integrated healthcare delivery system that operates a sixty-bed acute care hospital in Gallup, New Mexico. Plaintiffs are a group of Rehoboth employees considered to be non-exempt for purposes of calculating minimum wage and overtime wages. During the relevant period, Rehoboth employed hundreds of such non-exempt employees at its Gallup facility. The non-exempt

employees were all subject to Rehoboth's employee handbook. Particularly relevant to this case, the handbook outlined Rehoboth's policy on meal breaks.

{3} Under Rehoboth's meal break policy, non-exempt employees involved in direct patient care or support services received unpaid meal breaks. In order to carry out this policy of unpaid meal breaks, Rehoboth's timekeeping system automatically deducted time for meal breaks in half-hour increments. Basically, this means that non-exempt employees were provided with an unpaid half hour during their shift in which to eat, and the purpose of the automatic deduction was to ensure that this period was accounted for without the employee having to clock out and then clock back in. If an employee had to work through a meal break, the policy provided that the employee must get his or her supervisor's permission and must affirmatively punch the "no lunch" button on the time clock at the end of his or her shift. The "no lunch" option thus allowed the employee to be compensated for a meal period for which he or she worked. In addition, the employee could also report—after the fact—that he or she had worked through a meal break, and several avenues existed to reverse the automatic deduction. Specifically, the employee, supervisor, or payroll department could make changes to the employee's pay report.

{4} Plaintiffs are five non-exempt employees of Rehoboth who allege that they worked through their meal periods, but due to the automatic deduction, they were not

compensated for the time that they worked. They were employed in various capacities at Rehoboth's Gallup facility, including a technician on the overnight shift in the emergency department; a technician on the weekday shift in the radiology department; a certified nursing assistant (CNA) on the day shift in the medical/surgery department and emergency department; a CNA and patient care technician on the day shift in the emergency department; and a registered nurse on the overnight shift in the emergency department. The allegations common to all of Plaintiffs' claims are that supervisors at Rehoboth discouraged non-exempt employees from using the "no lunch" button and told employees that they were to find a way to take an uninterrupted meal break, but that employees were often called back to work or took calls for service during their meal breaks due to staffing issues. One Plaintiff alleges that he punched the "no lunch" button after one such occasion, but a supervisor revoked that entry.

{5} Plaintiffs brought suit under the MWA, alleging that Rehoboth's failure to compensate them for the time they worked during meal breaks resulted in a failure to pay them overtime wages. Plaintiffs also brought suit for unjust enrichment, basically alleging that Rehoboth was unjustly enriched by Plaintiffs' uncompensated labor. Relatively early in the litigation, Plaintiffs moved for conditional certification of a collective action under the MWA and certification of a class action for the unjust

enrichment claim. After full briefing, the district court denied certification of both the collective action and the class action. The district court certified its order for interlocutory appeal, pursuant to NMSA 1978, Section 39-3-4 (1999). Plaintiffs filed an application for interlocutory appeal, which this Court granted.

**DISCUSSION**

**Collective Action Under the New Mexico Minimum Wage Act**

{6}     Plaintiffs allege that, as a result of Rehoboth's failure to pay them for the time they worked during meal breaks, they were not properly compensated under the MWA for time they worked beyond forty hours per week. *See* § 50-4-22(D) ("An employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."). Plaintiffs brought suit on behalf of themselves and on behalf of other employees similarly situated. *See* § 50-4-26(C) ("[A]n employer who violates any provision of Section 50-4-22 . . . shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."); *see also* § 50-4-26(D) ("An action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and on behalf of the employee or employees and for other employees

4

similarly situated[.]"). Later, Plaintiffs moved to conditionally certify a collective action. The district court's denial of Plaintiffs' motion is a subject of this interlocutory appeal.

{7}     This Court first dealt with MWA collective actions in *Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 1, 142 N.M. 557, 168 P.3d 129. In *Armijo*, as in this case, the plaintiffs sought to certify the MWA claims for collective action on behalf of similarly situated employees. *Id.* ¶¶ 15, 47. Noting that no appellate decision in New Mexico had defined "similarly situated," we looked to federal cases dealing with a similar provision in the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219 (2012).[1] *Armijo*, 2007-NMCA-120, ¶ 47. In so doing, we recognized that federal courts have adopted or discussed at least three approaches to the issue. *Id.* ¶ 48. After discussing each of the various approaches, we concluded that the two-tiered/ad hoc approach adopted in *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001), is the proper standard to apply to collective actions under the MWA. *Armijo*, 2007-NMCA-120, ¶ 50.

---

[1]Unlike the FLSA, the MWA does not have extensive accompanying regulations defining and interpreting the statutory language. However, New Mexico courts have frequently looked to interpretations of the FLSA in order to interpret similar language in the MWA. *See, e.g.*, *Williams v. Mann*, 2017-NMCA-012, ¶¶ 29-30, 388 P.3d 295; *Armijo*, 2007-NMCA-120, ¶ 47.

{8} Under the two-tiered/ad hoc approach, "a court typically makes an initial notice stage determination of whether plaintiffs are similarly situated." *Thiessen*, 267 F.3d at 1102 (internal quotation marks and citation omitted). In effect, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members who may wish to opt in. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (explaining that conditional certification is "not really a certification[,]" but is simply the exercise of a district court's discretionary power to facilitate the sending of notice). At this initial stage, the court requires nothing more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Armijo*, 2007-NMCA-120, ¶ 48 (internal quotation marks and citation omitted).

{9} "At the second stage, which typically follows discovery and/or a motion to decertify the class, the court must revisit its initial determination, only now under a stricter standard of similarly situated." *Id.* (internal quotation marks and citation omitted). "Under this stricter analysis, the court should consider several factors in determining whether the putative class members are similarly situated," including the following: "(1) whether the class members have disparate factual and employment settings, (2) whether the available defenses to the claims are individual to each class

member, and (3) whether there are any fairness or procedural considerations relevant to the action." *Id.*

{10}    The initial question on appeal, which we address de novo, is whether the district court applied the proper legal standard. *See Thiessen*, 267 F.3d at 1105. The district court here indicated that it considered this case to be at the initial notice stage. Neither party takes issue with the district court's determination, and we also conclude that the district court applied the correct legal standard given the fact that very little discovery on the merits has been conducted. *See id.* at 1102-03 (stating that the second stage certification analysis occurs "[a]t the conclusion of discovery").

{11}    The next question, then, is whether the district court abused its discretion in denying Plaintiffs' motion for conditional certification under the initial notice-stage standard. *See id.* at 1105. Under this less stringent standard, Plaintiffs need present "*nothing more* than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (emphasis added) (internal quotation marks and citation omitted); *see also Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 663 (D.N.M. 2015) (observing that federal courts of appeals "that have considered the meaning of 'similarly situated' have consistently defined the phrase to require a minimal showing").

{12}    In the present case, after reviewing Plaintiffs' allegations and accompanying exhibits, the district court found that

> [t]his evidence establishes, at best, . . . Plaintiffs were discouraged from using the "no lunch" button and that their work circumstances, based on [Rehoboth's] scheduling practices, sometimes required them to work through meal breaks for which they were sometimes not compensated.

Despite this finding, the district court determined that Plaintiffs had not met their relatively minimal burden. The district court reached this conclusion based on its findings that Plaintiffs had not alleged an illegal policy or plan; Plaintiffs did not provide any evidence of a corporate atmosphere or culture to improve the bottom line; and Plaintiffs did not present methodologies by which they expected to demonstrate that uncompensated work during meal breaks was a widespread problem. We address each of these in turn.

{13}    With respect to the illegality of the policy or plan, the district court—apparently convinced by Rehoboth's argument that the requirement that the putative class be "victims" of a single decision, policy, or plan, means that the policy or plan must itself be illegal—found that

> these facts taken singularly or together do not establish substantial allegations of an *illegal* policy on the part of [Rehoboth]. No illegality is alleged, such as [Rehoboth], as a policy, disciplining or sanctioning Plaintiffs or putative class members required to work through a lunch break, or that [Rehoboth], as a policy, knowingly refus[ed] to pay employees for working through their lunch break. The failure to allege

something potentially *illegal* like the example above, precludes a finding of substantial allegations being made by . . . Plaintiffs.

(Emphases added.) The district court's reasoning appears to be undergirded by Rehoboth's contention that an automatic meal break deduction is not, in and of itself, unlawful. On this discrete point, we agree with Rehoboth. *See Fengler v. Crouse Health Found.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009) (stating that "the mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA"). However, we recognize that "[i]t is the failure of an employer to compensate employees who work through those unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the [FLSA]." *Id.*

{14} These same failures likewise potentially run afoul of the MWA and, consequently, are potentially unlawful notwithstanding the lawfulness of the automatic deduction itself. Put another way, Plaintiffs' allegations, accompanied by supporting affidavits, appear to set forth a potential violation of the MWA—that the putative class of Plaintiffs was sometimes required to work through meal breaks, but not compensated for such work—and that such violation stems from a single policy or plan to not only schedule workers in such a way that missing meal periods was sometimes unavoidable, but also to discourage employees from using the "no lunch"

9

button that would have resulted in full compensation for time worked. In concluding otherwise—that these allegations did not set forth a potentially unlawful or illegal policy—the district court relied on *Blaney v. Charlotte-Mecklenburg Hospital Authority*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631 (W.D.N.C. Sept. 16, 2011), and *Barron v. Henry County School System*, 242 F. Supp. 2d 1096 (M.D. Ala. 2003). We are not convinced that either case supports the district court's conclusion.

{15}     In *Blaney*, the only system-wide policy in place required full compensation for all hours worked. 2011 WL 4351631 at *8. The policy, requiring compensation for interrupted meal breaks, was entirely dependent on decentralized management practices to ensure its enforcement throughout thirteen medical care facilities (including nine primary hospital facilities). *Id.* at *1, *8. In essence, the discretionary and decentralized nature of enforcement reflected a policy against having a formal policy. *Id.* at *8. Viewing the facts in that light, the court in *Blaney* made no finding regarding the lawfulness of the policy; instead, the court found that there was no *common* policy at all. *Id.* In comparison, Plaintiffs in the present case allege a policy in a single facility that applied evenly to the purported class of Plaintiffs. Given this contrast, along with the *Blaney* court's acknowledgment that, in that case, "[p]laintiffs have presented no evidence of any unwritten policy which discouraged full compensation for even interrupted breaks, nor have [p]laintiffs presented evidence

10

of any requests for reversals of the auto-deduction that were denied[,]" *id.* at \*9, we are not convinced that *Blaney* is applicable or persuasive here.

{16}    The district court also relied on *Barron* to conclude that Plaintiffs did not allege an illegal common policy or plan. We observe, however, that in *Barron*, the court indicated that the Eleventh Circuit does not require proof of a common policy to establish that employees are similarly situated. 242 F. Supp. 2d at 1106. The court also treated the case as a pattern and practice claim and relied on evidence of a pattern of FLSA violations to conditionally certify a collective action, even in the absence of proof of a policy of knowingly and purposefully failing to pay overtime wages. *Id.* at 1105. Thus, *Barron* is inapposite and unconvincing for two reasons: first, Plaintiffs' case against Rehoboth is not based on a pattern and practice, but rather on allegations of a common policy or plan; and second, *Barron* does not bear on the issue at hand—whether Rehoboth's alleged policy is potentially unlawful.

{17}    Next, the district court determined that Plaintiffs failed to present sufficient evidence to support their allegation that Rehoboth fostered an unlawful corporate atmosphere or culture of requiring employees to work without pay in order to improve Rehoboth's bottom line, and that Plaintiffs failed to present methodologies through which they hoped to demonstrate that missed and uncompensated meal

breaks were a widespread problem. The district court, relying on *Armijo*, appears to have viewed these as requirements for collective action.

{18} *Armijo* had a different procedural posture from that of the present case. In *Armijo*, we recognized that although the case had been ongoing for six years and extensive discovery had been completed, there had in fact been no discovery on the merits. 2007-NMCA-120, ¶ 52. Consequently, we analyzed the case as occurring at the initial notice stage, reiterating that a plaintiff's burden is a low one. *Id.* ¶ 53. Nevertheless, in conducting the notice-stage analysis, we mentioned and considered evidence that had been produced during the six years of discovery—namely, methodologies for demonstrating a widespread corporate atmosphere and pattern and practice of forcing or coercing missed rest breaks and off-the-clock work in an attempt to minimize labor costs. *Id.* ¶¶ 52, 54. Our consideration of this evidence was not unusual. *See White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002) (stating that where there had been extensive discovery, the court would "carefully consider the submissions of the parties with respect to the class allegations, rather than merely relying on the handful of affidavits [supporting the plaintiff's] position"). And although we considered that particular evidence in *Armijo* in determining whether the plaintiffs had met their notice-stage burden, we did not indicate that the absence of such evidence would be fatal to a plaintiff's attempt to

conditionally certify a collective action under Section 50-4-26(D). We take this opportunity to reiterate that the only requirement at the initial notice stage is that a plaintiff make substantial allegations that similarly situated employees were the victims of a single decision, policy, or plan.

{19} Here, although acknowledging that this case is at the initial notice stage—and nominally applying the notice-stage standard—the district court actually applied a standard more closely resembling the more stringent second-stage standard. *See Thiessen*, 267 F.3d at 1103. That is, the district court looked at Plaintiffs' methods of proof, or lack thereof, in deciding whether to conditionally certify a collective action. This constitutes an abuse of discretion on the part of the district court, which should have determined simply whether Plaintiffs made substantial allegations that similarly situated employees were the victims of a single decision, policy, or plan. Further, to the extent that the district court relied on the inapposite and unpersuasive reasoning in *Blaney* and *Barron* to find that Plaintiffs failed to allege that they were victims of a single decision, policy, or plan, we conclude that the district court abused its discretion by misapprehending the law. *See Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 ("[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary

13

decision that is premised on a misapprehension of the law." (internal quotation marks and citations omitted)).

{20} We conclude that Plaintiffs' allegations, supported by affidavits, that the putative class was sometimes required to work through meal breaks, but not compensated for such work, and that such potential violations of the MWA stemmed from a single policy or plan to not only schedule workers in such a way that missing meal periods was sometimes unavoidable, but also to discourage employees from using the "no lunch" button that would have resulted in full compensation for time worked, satisfy the minimal standards associated with the notice stage. *See Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004) ("The standard for certification at this notice stage, then, is a lenient one that typically results in class certification."). We therefore reverse the district court's denial of conditional class certification under the MWA.

**Class Certification for Plaintiffs' Unjust Enrichment Claim**

{21} Plaintiffs also moved for class certification under Rule 1-023 NMRA for their unjust enrichment claim. The district court denied the motion. We review the district court's order denying class certification for an abuse of discretion. *See Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 7, 136 N.M. 599, 103 P.3d 39 ("Within the confines of Rule 1-023, the district court has broad discretion whether or not to

14

certify a class."). "If the district court has applied the correct law, we will uphold its decision if it is supported by substantial evidence." *Berry v. Fed. Kemper Life Assurance Co.*, 2004-NMCA-116, ¶ 25, 136 N.M. 454, 99 P.3d 1166.

{22} In determining whether class certification is appropriate, a district court must engage in a "rigorous analysis" to decide whether the requirements of Rule 1-023 are met. *Brooks*, 2004-NMCA-134, ¶ 9. At this stage, "it is essential for the court to understand the substantive law, proof elements of, and defenses to the asserted cause of action to properly assess whether the certification criteria are met." *Id.* ¶ 31; *see also Romero v. Philip Morris Inc.*, 2005-NMCA-035, ¶ 38, 137 N.M. 229, 109 P.3d 768 ("The district court's rigorous analysis often involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (internal quotation marks and citation omitted)). However, even though the party seeking class certification has the burden of demonstrating that each requirement of Rule 1-023 is met, "a district court should avoid examining the merits of the moving party's case at the time class certification is sought." *Armijo*, 2007-NMCA-120, ¶ 21. *But see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").[2]

---

[2] Rule 1-023 is identical to its federal counterpart. *Brooks*, 2004-NMCA-134, ¶ 8. "Hence, we can look to the federal law for guidance in determining the

15

{23}    "Class certification is appropriate under Rule 1-023 when all four prerequisites of Rule 1-023(A) and at least one of the requirements of Rule 1-023(B) are met." *Armijo*, 2007-NMCA-120, ¶ 25 (internal quotation marks and citation omitted). "Failure to establish any one requirement is a sufficient basis for the district court to deny certification." *Id.* (internal quotation marks and citation omitted). Here, the district court found that Plaintiffs failed to establish two requirements: (1) the prerequisite that there be questions of law or fact common to the class, Rule 1-023(A)(2), usually referred to as "commonality," *see Berry*, 2004-NMCA-116, ¶ 42; and (2) the requirement that the questions of fact or law common to members of the class predominate over any questions affecting only individual members, Rule 1-023(B)(3), commonly referred to as "predominance," *see Berry*, 2004-NMCA-116, ¶ 48.

{24}    In light of the two infirmities identified by the district court, we are essentially dealing with two overlapping requirements for class certification. *See id.* ¶ 42 (explaining that "the commonality requirement is usually subsumed by the predominance requirement"). That is, commonality asks whether there are issues common to the class and predominance asks whether these common questions predominate over individual issues.

---

appropriate legal standards to apply to the Rule." *Id.*

16

{25}   Turning first to commonality, the United States Supreme Court has emphasized that commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In order to determine whether Plaintiffs' claim here depends upon a common contention, we look at the elements of the claim. *Brooks*, 2004-NMCA-134, ¶ 31. The elements of unjust enrichment are: "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695. To put the claim simply, Plaintiffs are alleging that Rehoboth benefitted from the purported class members' uncompensated work and that it would be unjust under the circumstances for Rehoboth to retain the benefit of the free labor.

{26}   At the outset, we observe that if Rehoboth's employees followed the handbook and policy on meal breaks, they should not have, in the usual course, worked through their meal breaks. In fact, use of the "no lunch" button or the other methods by which an employee can ensure payment would only be necessary in the event that an employee works through his or her meal break. Thus, according to Plaintiffs, an instance in which an employee works through a meal break, and is not compensated for doing so, raises the following questions. Can Rehoboth, as a matter of law, defend

17

its failure to pay for the meal breaks by the mere presence of the "no lunch" button? Were the employees subject to a culture or mindset that discouraged them from utilizing the "no lunch" button? And were Rehoboth's staffing levels such that employees could not take their meal break?

{27} The answers to these questions, according to Plaintiffs, constitute common contentions that will resolve issues central to Plaintiffs' unjust enrichment claim. In other words, Plaintiffs' argument is that Rehoboth benefitted from the employees' uncompensated work and that it would be unjust to allow Rehoboth to retain that benefit where the free work resulted from Rehoboth's staffing issues and concomitant discouragement of employees from using the "no lunch" option. The district court disagreed, determining that these answers would not resolve the unjust enrichment claim in one stroke. *See Dukes*, 564 U.S. at 350.

{28} Normally, we would review whether the district court erred in its commonality determination. However, the district court, in an abundance of caution, went on to analyze whether common issues predominate for purposes of Rule 1-023(B)(3). As we noted above, the commonality requirement is usually subsumed by the predominance requirement. *See Berry*, 2004-NMCA-116, ¶ 42. And for the reasons that follow, even if we assume that there are common issues that satisfy the

18

commonality requirement, we conclude that the district court did not err in finding that Plaintiffs did not establish predominance.

{29} "The end goal of the predominance inquiry is to determine whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.* ¶ 47 (internal quotation marks and citation omitted). Generally, "predominance may be found when the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Id.* ¶ 48 (omission, internal quotation marks, and citation omitted). As a result, "the predominance requirement brings into primary focus the plaintiffs' proposed methods of proof at trial of the elements of their claims." *Armijo*, 2007-NMCA-120, ¶ 32 (internal quotation marks and citation omitted).

{30} The questions for the district court, then, were whether Plaintiffs' common allegations that the employees worked through their meal breaks because Rehoboth's staffing levels required them to and that the employees did not seek compensation for such work because of a culture that discouraged the use of the "no lunch" button were not only susceptible to common proof, but also whether those issues predominated over issues subject to individualized proof. *See Berry*, 2004-NMCA-116, ¶ 49 (observing that the predominance inquiry should focus on the relationship between

common and individual issues). The district court resolved the second question in the negative, stating that "issues requiring individualized proof predominate . . . Plaintiff[s'] claims." The district court reached this conclusion based on Plaintiffs' failure to present a methodology by which they intended to prove their allegations on a classwide basis and on the individualized defenses available to Rehoboth. *See id.* ¶ 50 ("The focus for the district court is whether the proof at trial will be predominantly common to the class or primarily individualized.").

{31}     We can see no abuse of discretion on the part of the district court in this regard. Specifically, even if we were to assume that the culture issue is susceptible to common proof, through testimony that supervisors discouraged employees from using the "no lunch" button, we are not convinced that the understaffing question can be answered by common proof. That is, proving classwide liability on that point presents particular problems where the putative class encompasses a variety of positions and shifts and where each instance of understaffing may depend on, as Rehoboth argues, the number of patients and the amount of staff on duty on any given shift. While we are not certain that these issues can never be established by common proof, the district court found that Plaintiffs here failed to offer *any* methodology by which they intend to prove, by common evidence, that Rehoboth's understaffing resulted in unjust enrichment.

20

{32}     Our review of Plaintiffs' briefing, both in the district court and in this Court, bears this out. Plaintiffs address their proposed methods of proof in two ways. First, Plaintiffs cite *Romero*, stating somewhat matter-of-factly that "[t]he questions common to the class are, as in *Romero*, subject to common proof." However, Plaintiffs do not in any way describe *how* the common questions particular to this case will be proven, or indeed how Plaintiffs' nondescript proposed methods of proof compare with those in *Romero*. We note that in *Romero*, the plaintiffs met their predominance burden by showing widespread antitrust injury to the class through presentation of various methodologies, including correlation analysis via an economic expert. 2005-NMCA-035, ¶¶ 90-91. In this sense, Plaintiffs' citation to *Romero* actually serves to underscore the lack of methodology proposed here. Second, Plaintiffs refer to representative testimony, citing *Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036 (2016), as supplemental authority. We note that the United States Supreme Court stated in *Tyson Foods* that "[w]hether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action[,]" and concluded that "[t]he fairness and utility of statistical methods in contexts other than those presented here will depend on facts and circumstances particular to those cases." *Id.* at 1049. Aside from a relatively bare bones presentation regarding

21

representative testimony, Plaintiffs have not provided us with the facts and circumstances that would justify the use of representative testimony here. In fact, Plaintiffs have not put forth what form their purported representative testimony would take or how it would be used to establish classwide liability. This Court has no duty to review an argument that is not adequately developed. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim). "To rule on an inadequately briefed issue, [the appellate courts] would have to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. "This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for [the appellate courts] to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.*

{33} We conclude that sufficient evidence supports the district court's finding that Plaintiffs have failed to produce any methodology by which they intend to establish classwide liability—in particular, that staffing issues caused each purported class member to work through meal breaks uncompensated—whether through representative testimony, statistical evidence, expert testimony, or otherwise. We

22

therefore cannot fault the district court for concluding that Plaintiffs did not meet their burden to demonstrate that common issues predominate over individual ones. Consequently, we are satisfied that the district court did not abuse its discretion by denying class certification.

**CONCLUSION**

{34}    For the reasons stated above, we reverse the district court's denial of conditional certification for Plaintiffs' collective action under the MWA, and we affirm the district court's denial of class certification for Plaintiffs' unjust enrichment claim.

{35}    **IT IS SO ORDERED.**

_____
**DANIEL J. GALLEGOS, Judge**

**WE CONCUR:**

_____
**STEPHEN G. FRENCH, Judge**

_____
**EMIL J. KIEHNE, Judge**